[Civ. No. 31125.    Second Dist., Div. One.    Aug. 18, 1967.]

JOHN W. SANDBERG et al., Plaintiffs, Cross-defendants and Appellants, v. JESSIE M. JACOBSON et al., Defendants, Cross-complainants and Respondents.

Pettler, Gamble, Yardum & Dickey, Alfred L. Armstrong and LeVone A. Yardum for Plaintiffs and Appellants.

Evelyn E. Whitlow and Weitkamp, Riddle & Bedrosian for Defendants and Respondents.

LILLIE, J.—Plaintiffs appeal from an adverse judgment in an action to dissolve an alleged partnership in a certain Santa Maria trailer park and for a partnership accounting, which judgment also awarded defendants damages on their cross-complaint and decreed that two trailers registered in the names of plaintiffs (cross-defendants) were the property of the cross-complainants (defendants). Execution of the judgment, insofar as it relates to the assignment and delivery of certain documents implementing the court's determination was stayed pending disposition of the within appeal. (Code Civ. Proc., § 943.)

The sole grounds of appeal are that the evidence does not support the findings and, therefore, the judgment predicated thereon; and that such determination was reached as the result of erroneous reasoning reflected by a memorandum opinion filed by the trial court. ██ These contentions require a summary of the evidence which must be viewed in the light most favorable to the parties prevailing below; in that connection we note that the question whether under the circumstances in suit a partnership was created, the principal

issue at bar, is primarily one for the trial court to determine from the facts and inferences deducible therefrom. (*Farmers & Merchants Bank* v. *Kirk*, 165 Cal.App.2d 470, 473 [332 P.2d 131].)

Plaintiff Sandberg, a licensed real estate salesman and accountant, first became acquainted with defendants in 1948; thereafter he annually prepared their income tax returns until 1961. In the summer of 1960 defendants were operating the subject trailer park (known as Vagabond Mobile Village) as partners with Mr. and Mrs. Childs on land leased to them by the County of Santa Barbara—each couple owned a one-half interest therein. A dispute having arisen with respect to its operation, at defendants' request, Sandberg finalized the purchase by them of the Childs' interest for a sum previously agreed upon by the parties. The purchase price, $58,445, was payable in installments over a period of some 16 months. Difficulties apparently developed over the financing of the above installments and other obligations owed by the trailer park. This resulted in the conveyance to Sandberg, a few days prior to the agreement in suit, of five parcels of real property to be held by him in trust; with one such parcel as collateral, he later secured a loan which, together with another loan secured by an assignment of rents from the trailer park, was used to discharge in part defendants' indebtedness to their former partners. Prior to these transactions, according to Sandberg, Mrs. Jacobson offered him a 15 percent interest in the trailer park without his assumption of any liabilities or a 49 percent interest substantially equivalent to that once held by Mr. and Mrs. Childs. On March 12, 1961, the instrument in suit was presented to the Jacobsons for their execution;[1] it was typed

---

[1] "Santa Maria, California, March 12, 1961

"For a valuable consideration, receipt of which is acknowledged, we sell, assign, and transfer to JOHN W. SANDBERG and GARNET V. SANDBERG, his wife, as joint tenants, an undivided 49/100ths interest in and to that certain Trailer Park known as Vagabond Mobile Village, 4000 S. Blosser Road, Santa Maria, Santa Barbara, California.

"As a further consideration JOHN W. SANDBERG and GARNET V. SANDBERG agree to reimburse JESSE M. JACOBSON and SUSAN A. JACOBSON for whatever amount they have paid or will pay, including interest, to ELMER S. CHILD and META M. CHILD, under that agreement for dissolution of partnership heretofore entered into between the undersigned, and the above described ELMER S. CHILD and META M. CHILD, up to, but not exceeding, $58,445.00, principal, plus any interest paid.

"It is further understood that JOHN W. SANDBERG and GARNET V. SANDBERG will reimburse JESSE M. JACOBSON and SUSAN A. JACOBSON 49/100ths of any sums spent for improvements to the park from September 1, 1960.

"Any sums due by JOHN W. SANDBERG and GARNET V. SANDBERG to the

by a layman, one Sullivan, with wording provided by Sandberg. The evidence is in conflict as to whether the signatories were all present at the time and place described; the defendants also tstified that the agreement did not purport to convey what the parties actually intended. It seems undisputed, however, that on the day in question there was no discussion as to what percentage of the losses, if any, were to be borne by the Sandbergs. As will further appear, the measure of plaintiffs' participation in any losses of the undertaking continued to be uncertain even at the time of trial.

Subsequent to the above date (March 12), Sandberg assisted in the sale of certain Jacobson properties, disbursing the proceeds (deposited in his own checking account) to pay for taxes and improvements on the trailer park. On January 4, 1962, he and Mr. Jacobson signed an agreement providing in part that "Sandberg has an undivided interest in Vagabond Mobile Village." Thereafter the County of Santa Barbara and the City of Santa Maria, as lessors, and the Sandbergs and Jacobsons, as lessees, signed a modification of the lease to the trailer park property whereunder the names of Mr. and Mrs. Childs were deleted and those of Mr. and Mrs. Sandberg inserted. Still later, the parties to this litigation borrowed $50,000 from a savings and loan association on a note and trust deed executed by them and covering the leasehold interest above referred to. From the proceeds of this loan, the balance of the sum owing them ($19,081.59) was paid to Mr. and Mrs. Childs; from the same loan Sandberg received $20,663.53, from which he disbursed $11,370.78 in payment of sums borrowed by the Jacobsons from another party shortly after they had bought out Mr. and Mrs. Childs.

In April of 1962 the Childs quitclaimed their interest in the leased premises to the Jacobsons who, a few days later, assigned the interest thus conveyed to the Sandbergs. In June of the same year an amendment involving the lease was executed by the lessors and the Sandbergs and Jacobsons as lessees. In August of 1962 Mrs. Jacobson and Sandberg opened a joint account in a Santa Maria bank.

---

undersigned may be paid directly by cash or out of their share of the profits.

/s/ Jesse M. Jacobson
/s/ Susan A. Jacobson

"Accepted 3/12/61
/s/ John W. Sandberg
/s/ Garnet V. Sandberg"

The above transactions, all assertedly indicative of the existence of a partnership, were accompanied by other activities on Sandberg's part which purportedly point to the same conclusion. Thus, in 1962 he caused to be prepared a partnership return for the trailer park wherein the parties here litigating were listed as partners; too, balance sheets were prepared on October 31, 1961, showing the "net worth" of both Jacobson and Sandberg in the business. Another statement, dated June 20, 1962, was also prepared by Sandberg, listing the present parties as partners.

The statement last mentioned was turned over by Mrs. Jacobson to her attorney who wrote the Sandbergs a letter which apparently precipitated the instant lawsuit. Demand was therein made that copies of all Mrs. Jacobson's individual and partnership returns be furnished immediately; that a complete accounting of all operations of the trailer park likewise be supplied; and that a full explanation be made respecting the capital accounts of all persons having any interest in the subject business. Having admitted upon the trial that he made no attempt to find out how capital accounts should be set up under the Uniform Partnership Act (Corp. Code, §§ 15001-15045), Sandberg was presumably unable to comply with the inquiry last mentioned. With respect to the income tax returns, his testimony as to their preparation and accuracy becomes suspect in view of several contradictions as well as contrary evidence given by the Jacobsons.

"In determining whether a relationship such as that of partners has been created, the courts are guided not only by the spoken or written words of the contracting parties, but also by their acts." (*Singleton* v. *Fuller*, 118 Cal.App.2d 733, 740 [259 P.2d 687].) In the present case, therefore, the trial court was called upon to determine whether a partnership was created under the agreement of March 21 (fn. 1), and if not, whether the subsequent acts of the parties manifested an intention by all concerned to establish such relationship notwithstanding the failure of the agreement clearly to so declare. Defendants complain that the Sandbergs made no contribution of capital from their personal funds to the proposed partnership undertaking either by payment to the Jacobsons directly or to the Childs in satisfaction of the indebtedness owed them by the Jacobsons; nor, we note, was there any time limit within which reimbursements would be made to the Jacobsons. But that of itself does not appear to be

the test that a partnership did not thereafter exist provided other essential elements are not wanting (*Bowen* v. *Velliquette,* 153 Cal.App.2d 847, 850-851 [315 P.2d 95]); thus, in the case just cited, likewise involving an interest in a trailer park, it was agreed that plaintiff would put up $7,500 as an investment in the business with no time limit within which to do so, and it was held that plaintiff did not lose his rights as a partner by failing to pay the above sum.

■ It is essential, however, to the existence of a partnership that there be a community of interest and an agreement to share jointly in the profits and losses resulting from the enterprise (Corp. Code, § 15018, subd. (a)); as properly pointed out by the trial court in its memorandum opinion, there is nothing in the March 21 agreement tending to show the relationship here claimed until the last paragraph wherein it is provided that sums due the Jacobsons may be paid in the alternative ''out of [the Sandbergs'] share of the profits.'' An agreement for division of profits implies, of course, an agreement also to bear the losses (*Constans* v. *Ross,* 106 Cal.App.2d 381, 389 [235 P.2d 113]), and the division of such profits and corresponding losses may be left to the agreement of the parties. (*Campagna* v. *Market Street Ry. Co.,* 24 Cal.2d 304, 309 [149 P.2d 281].) As noted earlier, there was admittedly no discussion of any assumption of losses by the Sandbergs when the subject contract was executed; presumably, therefore, the determination of any losses to be assumed necessarily had to await an accurate computation of the net profits, if any, resulting from the undertaking.[2] Mr. Sandberg's answers to the court's interrogation in this regard are obscure and unsatisfactory. ''THE COURT: Did you have any discussion on March 12th of 1961 or, thereabouts as to how the profits of this trailer park were to be arrived at or computed: THE WITNESS: Just by good accounting, sir.'' Questioned further as to how the profits were to be computed, Sandberg replied: ''I was to keep the books for the park and record any and all income and expenses and, et cetera, that would eventually end up in what the net profit or loss was.'' Subsequently he was asked as to a number of obligations the Jacobsons owed under the dissolution agreement of September 1, 1960 (presumably with the Childs): ''Did you have any

---

[2]As stated in *Holtz* v. *United Plumbing & Heating Co.,* 49 Cal.2d 501, 507 [319 P.2d 617], ''an understanding as to the division of the profits ordinarily carries with it, in the absence of an express agreement to the contrary, an implied obligation to share losses in the same proportion. [Citations.]''

discussion on March the 12th, 1961, with them as to whether or not the trailer park was going to be considered as making a profit, before those obligations had been liquidated or, not until after they had been liquidated or anything of that sort? THE WITNESS: No, sir, I don't believe so, sir. THE COURT: But it was your position, anyway, your understanding, that this venture could make a profit even before those obligations had been lifted; right? THE WITNESS: Well, yes, the actual profit of the operations, yes.''

■ As the instrument in suit clearly shows, plaintiffs' share of the profits is not spelled out, and the evidence produced to fix some computable or ascertainable measure in that respect is vague and uncertain. Under such circumstances, the court below was well warranted, as trier of the fact, in concluding that there was never any meeting of the minds on this essential element of the claimed relationship even though there were other actions and activities which might be construable as those of partners. Plaintiffs cite *Doudell* v. *Shoo*, 20 Cal.App. 424 [129 P. 478], for the proposition that when two or more persons become associated for the purpose of carrying on a business without any reference as to the division of profits, a partnership may nonetheless be created. In the present case, however, there was such a reference, but in the judgment of the trial court plaintiffs' proof fell short of a determinable formula for fixing the profits derivable, or the corresponding losses assumable, from the enterprise. In this connection, it should be observed that plaintiffs also sought a dissolution of the partnership (if one were held to exist) and a division of the surplus, after payment of debts and liabilities, ''according to the [parties'] respective interests.'' In the present state of the record, such interests would have been incapable of ascertainment.

■ The burden rested with plaintiffs at this stage of the proceedings to show that there is no substantial evidence to sustain the challenged findings (*Binning* v. *Binning*, 210 Cal.App.2d 693 [27 Cal.Rptr. 187]); except for another point (presently to be mentioned), the insufficiency of the evidence is the sole ground of appeal, and it must be concluded that plaintiffs have not met the burden referred to above. Cases cited by plaintiffs in support of their claims are factually distinguishable; indeed, one such case (*Lyon* v. *MacQuarrie*, 46 Cal.App.2d 119 [115 P.2d 594]) definitely holds that evidence supporting the finding of a partnership is as binding on appeal as any other controverted fact—and, of course, a

contrary determination below (as here) is likewise conclusive.
 Nor is there merit to plaintiffs' remaining point that the trial court relied upon erroneous reasoning in arriving at its judgment. According to plaintiffs, they do not contend that the instrument of March 12 is a partnership agreement; rather, the effect of the sale of a 49 percent interest in the trailer park was to establish a partnership in its operation even though the parties' shares of profits are not specified. But, as noted in the trial court's memorandum, ''part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.'' (Corp. Code, § 15007, subd. (2).) And, as we have heretofore concluded, there must be some measurable method by which each party's participation in the losses as well as the profits can be computed.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied September 8, 1967, and appellants' petition for a hearing by the Supreme Court was denied November 8, 1967.