[No. B062559. Second Dist., Div. Seven. May 12, 1992.]

MARKETING WEST, INC., et al., Plaintiffs and Appellants, v.
SANYO FISHER (USA) CORPORATION, Defendant and Respondent.

604

**COUNSEL**

Browne & Woods, Peter W. Ross and Micahel J. Olecki for Plaintiffs and Appellants.

Pillsbury, Madison & Sutro, Kenneth R. Chiate, Michael H. Salinsky and Kent B. Goss for Defendant and Respondent.

**OPINION**

**WOODS (Fred), J.**—Plaintiffs appeal from a judgment entered in defendant's favor following the granting of defendant's summary judgment motion on the basis that plaintiffs could not reasonably rely on defendant's alleged representations or alleged concealed facts which were contradicted by an unambiguous "without cause" termination provision in their employment agreements with defendant. Plaintiffs contend that their evidence of defendant's fraudulent concealment is not barred by the parol evidence rule and their contract claim is not barred by the statute of limitations.[1] We reverse because defendant's summary judgment motion did not address the alternative theory of fraudulent concealment.

FACTUAL AND PROCEDURAL SYNOPSIS

A. *The Written Agreements*

Each of the six appellants is a corporation and a former independent sales representative for respondent's Home Appliance Division.

In 1987, appellants signed written agreements (1987 Agreements or New Jersey Agreements) which provided for termination without cause and were fully integrated.

By letter dated May 25, 1988, respondent sent appellants revised sales representative agreements (1988 Agreements) and requested that appellants sign and return the agreements prior to June 6, 1988. That letter stated:

---

[1]The court made numerous rulings during the proceedings and determinations in granting summary judgment. Appellants have challenged only two—the parol evidence determination and the statute of limitations determination on the fourth and fifth causes of action.

As to the court's rulings and determinations on the other causes of action which are not challenged in appellants' opening brief, they are deemed abandoned or waived and are not subject to review. (*Humes* v. *MarGil Venture, Inc.* (1985) 174 Cal.App.3d 486, 493 [220 Cal.Rptr. 186].)

"In connection with the reorganization of Sanyo Electric, Inc. and Fisher Corporation into one corporation, Sanyo Fisher (USA) Corporation, we have been conducting a thorough review and evaluation of our marketing policies and objectives, including the development of new, substantially improved Sales Representative Agreements. In order to conform the terms of our Home Appliance Division Sales Representative Agreement with you dated as of December 1, 1987, to the new Sales Representative Agreements being offered to sales representatives for our consumer electronics and other products, we have revised our Home Appliance Division Sales Representative Agreement."

Appellants each signed the 1988 Agreements, which became effective on June 1, 1988. The 1988 Agreements contained the following provisions:

"Either party may terminate this Agreement, without cause, at any time upon ninety (90) days' prior written notice to the other party; provided, however, that SFC may not exercise its right to terminate this Agreement, without cause, pursuant to this Article VI.B(1) prior to November 30, 1988."

"There are no understandings not contained in this Agreement, and this Agreement shall supersede and cancel all previous contracts, arrangements or understandings that may have existed or may exist between the parties. This Agreement may be amended only by a written instrument signed by a duly authorized representative of SFC and Sales Representative."

Five of the appellants were terminated effective May 1989, and the sixth was terminated effective May 1990.

B. *The Complaint*

On March 6, 1990, appellants filed a complaint containing seven causes of action, all relating to their termination. The complaint asserted causes of action for fraud, negligent misrepresentation, rescission, breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, and interference with advantageous business relations. Appellants later filed a first amended complaint which added a prayer for attorney fees.

Appellants alleged that prior to December 1987, each appellant had served as an independent sales representative for respondent pursuant to an oral agreement, which could be terminated only for good cause, which was narrowly defined.

Appellants alleged that in November 1987, they were summoned to a meeting in New Jersey at which they were presented with the 1987 Agreements. At the meeting:

"Plaintiffs were informed by Sanyo's Senior Vice President, Patricia Rienzi, among others, that the New Jersey Agreements had been developed for use by Sanyo's other divisions, but that plaintiffs were being asked to sign only for the purpose of uniformity, and the New Jersey Agreements would have no effect on plaintiffs' division. Plaintiffs were further informed that the agreements 'did not mean anything,' did not change the terms of their relationship with Sanyo, were just part of the reorganization process involved in the merger, and that the execution of the New Jersey Agreements was a mere 'formality' and was 'just *pro forma*,' and that Sanyo's appliance division would not 'go direct' (meaning the independent sales representatives would not be replaced by an in-house sales staff) as long as the independent sales representatives continued to perform."

Appellants also alleged that they were told they would be terminated if they did not sign the agreements before they left the room, that respondent concealed from them its decision to replace them as sales representatives and that the purpose of the 1987 Agreements was to circumvent the good cause requirement of the oral agreements, and that they signed the 1987 Agreements.

Appellants alleged that they were unaware of the true facts when they signed the 1988 Agreements. It was further alleged that the 1989 and 1990 terminations were without good cause as defined in the oral agreements.

C. *The Summary Judgment Motion*

Respondent filed a motion for summary judgment on the basis that appellant had signed the 1987 and 1988 Agreements which unequivocally provided for termination without cause and were fully integrated. Respondent's separate statement of facts was supported by declarations and exhibits.

Appellants filed an opposition and responsive separate statement of facts. The majority of the evidence supporting appellant's disputed facts and additional material facts consisted of their responses to interrogatories, which were made on information and belief and not on personal knowledge, and their unverified complaint. The court sustained respondent's hearsay objections to the use of the interrogatories and the unverified complaint.

The court granted respondent's motion for summary judgment.

Subsequently, appellants' motions for reconsideration and a new trial were denied. Judgment was entered, and appellants filed a timely notice of appeal.

## DISCUSSION

### I. *Standard of Review*

■ "Summary judgment is a drastic measure which should be used with caution so that it does not become a substitute for trial. Affidavits of the moving party are strictly construed and those of the opponent liberally construed, with doubts as to the propriety of granting the motion resolved in favor of the opposing party. [Citation.] ■ Summary judgment raises only questions of law, which are reviewed independently. Our review tracks the same three-step process used by the trial court: First, we identify the issues framed by the pleadings. Second, we determine whether the moving party has established facts sufficient to negate the opponent's claim. Third, if that burden is met, we examine whether the opposing party's showing discloses that triable issues of material fact exist." (*Biljac Associates* v. *First Interstate Bank* (1990) 218 Cal.App.3d 1410, 1420 [267 Cal.Rptr. 819].)

■ " 'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.] To succeed, the defendant must conclusively negate a necessary element of the plaintiff's case, and demonstrate that under *no hypothesis* is there a material issue of fact that requires the process of a trial.' [Citation.] An appellate court determines de novo whether there is a genuine issue of material fact and whether the moving party was entitled to summary judgment as a matter of law." (Italics added.) (*Homestead Savings* v. *Darmiento* (1991) 230 Cal.App.3d 424, 430 [281 Cal.Rptr. 367].)

### II. *Fraudulent Representations*

Appellants state that the trial court granted summary judgment in respondent's favor based on a line of cases which holds that when promissory fraud is alleged, the parol evidence rule bars evidence of fraudulent promises which directly contradict promises contained in the written agreement. (*Bank of America etc. Assn.* v. *Pendergrass* (1935) 4 Cal.2d 258, 263 [48 P.2d 659]; *West* v. *Henderson* (1991) 227 Cal.App.3d 1578, 1583 [278 Cal.Rptr. 570].) Appellants contend that since they complained of a fraudulent concealment of material facts which resulted in their execution of written agreements with respondent, the court erred in holding that evidence of respondent's fraudulent concealment is barred by the parol evidence rule, and therefore the summary judgment must be reversed.

Appellants state that the only ground upon which respondent challenged their fraud claim was that appellant's evidence of fraud was barred by the

parol evidence rule. Appellants are not correct. Although that ground was raised in respondent's reply brief below, respondents moved for summary judgment on the basis that appellants could not have reasonably relied upon alleged oral representations which contradicted the unambiguous "without cause" termination provision of the written agreements and that no representations were made in connection with the 1988 Agreements pursuant to which appellants were terminated.

In its order, the court made the following relevant rulings:

"Plaintiffs' asserted causes of action for fraud and negligent misrepresentation . . . cannot be established, since, as a matter of law, plaintiffs could not reasonably have relied upon alleged oral representations or alleged concealed facts which contradicted the unambiguous 'without cause' termination provisions of the written Agreements. [*Slivinsky* v. *Watkins-Johnson Co.* (1990) 221 Cal.App.3d 799 [270 Cal.Rptr. 585].]

"The alleged oral representations and concealed facts upon which plaintiffs rely are expressly and/or impliedly contradicted by the unambiguous 'without cause' provision of the written agreements.

"As a separate and independent reason for granting summary judgment, the Court finds that each Additional Material Fact relied upon by plaintiffs which is based on plaintiffs' own interrogatory responses is inadmissible because those responses are verified only upon information and belief. Also, plaintiffs' reliance on the facts alleged in the First Amended Complaint is based on inadmissible evidence. However, even if the Court considered such evidence offered by plaintiffs as though such evidence was presented in an admissible form, such evidence does not create any triable issue of any material fact for the reasons set forth above."

In the first amended complaint, appellants alleged that:

"Plaintiffs were informed by Sanyo's Senior Vice President, Patricia Rienzi, among others, that the New Jersey Agreements had been developed for use by Sanyo's other divisions, but that plaintiffs were being asked to sign only for the purpose of uniformity, and the New Jersey Agreements would have no effect on plaintiffs' division. Plaintiffs were further informed that the agreements 'did not mean anything,' did not change the terms of their relationship with Sanyo, were just part of the reorganization process involved in the merger, and that the execution of the New Jersey Agreements was a mere 'formality' and was 'just *pro forma*,' and that Sanyo's appliance division would not 'go direct' (meaning the independent sales representatives would not be replaced by an in-house sales staff) as long as the independent sales representatives continued to perform."

■ The court's ruling that appellants could not reasonably rely on these representations is correct since the representations are contradicted by the existence of the integrated written agreements providing that appellants could be terminated without cause. Respondent's alleged statements, which in essence are promises that the agreements were without meaning, are similar to a promise not to enforce a note made contemporaneous with the execution of a note containing a promise to pay the note on demand. The Supreme Court concluded testimony of such a promise could not be permitted because it would nullify the parol evidence rule. (*Bank of America etc. Assn.* v. *Pendergrass, supra,* 4 Cal.2d 258, 263.)

In *Slivinsky* v. *Watkins-Johnson Co., supra,* 221 Cal.App.3d 799, 807, the court concluded that an employee's reliance on an employer's oral promise of continuing employment was not justified because the representation contradicted the parties' integrated employment agreement which provided that employment was at will. Respondent's representation that it would not go direct as long as appellants continued to perform is analogous to a promise of continuing employment and is likewise contradicted by the provision in the integrated agreements that termination could be without cause.

III. *Fraudulent Concealment*

■ However, appellants also alleged that:

"[D]efendants had adopted a plan to eliminate the independent sales representatives such as plaintiffs, but only in the more profitable sales territories. . . . Further, defendants intended to replace plaintiffs with an in-house sales organization, and the New Jersey Agreements were adopted and presented to plaintiffs as part of this plan. . . . The New Jersey Agreements were an artifice employed for the sole purpose of circumventing the good cause requirement of the Oral Agreements"; "Defendants concealed from plaintiffs . . . the fact that defendants intended to replace plaintiffs as sales representatives and the real purpose of the New Jersey Agreements"; and they were unaware of the true facts when they signed the 1988 Agreements.

The court granted summary judgment on the basis that appellant could not reasonably rely on the alleged oral representations or on the alleged concealed facts.

■ However, the elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a

material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage. (BAJI No. 12.35 (7th ed. 1986).)

 From our review of the first amended complaint, it is apparent that appellants were asserting a cause of action for fraud based on concealment in relation to both the 1987 and 1988 Agreements. Thus, in order to be entitled to summary judgment, respondent had to defeat that theory in addition to the fraud based on affirmative misrepresentation. (Cf. *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 127 [109 Cal.Rptr. 724].) At this stage in the proceedings, the burden was not on appellants to prove that facts had been concealed, but on respondent to negate at least one element of the action for fraud based on concealment.

 "In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the defendant actively conceals discovery from the plaintiff." (Fns. omitted.) (*Warner Constr. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 294 [85 Cal.Rptr. 444, 466 P.2d 996].)

Appellants' allegations that respondent represented to appellants that signing the written agreements was merely a formality and that it would not "go direct" even though respondent had already decided to terminate appellants fall into the categories discussed in *Warner.* At the time of the signing of the 1988 Agreements, respondent was still concealing its decision to terminate appellants.

 "But the rule has long been settled in this state that although one may be under no duty to speak as to a matter, 'if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all he must make a full and fair disclosure.' " (*Rogers* v. *Warden* (1942) 20 Cal.2d 286, 289 [125 P.2d 7].)

 We conclude that the issue of respondent's duty to disclose in this case is fact dependent and a question for the trier of fact, not a question of law. (Cf. *Sandberg* v. *Jacobson* (1967) 253 Cal.App.2d 663, 664-665 [61 Cal.Rptr. 436]; *Zinn* v. *Ex-Cell-O Corp.* (1957) 148 Cal.App.2d 56, 68-70 [306 P.2d 1017]; *Walker* v. *KFC Corp.* (9th Cir. 1984) 728 F.2d 1215, 1221-1223.) Accordingly, the summary judgment is reversed as respondent did not establish that there was no fraudulent concealment.

## IV. *Breach of Contract*

 Appellants contend that the trial court's ruling that their causes of action for breach of contract and breach of the implied covenant were barred by the two-year statute of limitations applicable to oral contracts (Code Civ. Proc., § 339.1[2]) was erroneous, as respondent's threat to terminate appellants in November 1987 was not a breach, and even if it was, the cause of action did not accrue until June 1989 when appellants were terminated. (*Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 59 [35 Cal.Rptr. 652].) The trial court also ruled that those causes of action could not be maintained because the oral agreements were superseded by the written agreements.

 The limitations period begins to run when the plaintiff possesses a true cause of action, i.e., where events have developed to a point where the plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages. (*Davies* v. *Krasna* (1975) 14 Cal.3d 502, 513 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807].) The *Davies* court reasoned that: "[T]he infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period. . . . neither uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations." (*Id.*, at p. 514.)

 It was undisputed that Patricia Rienzi threatened to terminate appellants if they did not sign the 1987 Agreements before leaving the room. That condition was not "good cause" as defined by the oral agreements. Appellants were harmed by giving up their right to be terminated only for good cause. Accordingly, respondent breached the oral agreements in November 1987, starting the running of the statute of limitations. (*Trustees of Capital Wholesale Electric etc. Fund.* v. *Shearson Lehman Brothers, Inc.* (1990) 221 Cal.App.3d 617, 627, fn. 4 [270 Cal.Rptr. 566].) The complaint was filed on March 6, 1990, more that two years later and is thus barred by the applicable statute of limitations.

---

[2]All statutory references are to the Code of Civil Procedure.

## V. *Evidence*

Respondent contends that no evidence was properly before the court giving rise to a triable issue as to any fraud committed by it. In this case, the burden was on respondent to introduce evidence that it did not conceal facts. A word of caution is necessary since appellants claim that even if they had to produce evidence, there was sufficient evidence to raise a triable issue in interrogatory responses which were mirrored by sworn testimony in depositions lodged in the trial court.

Appellants argue that section 437c, subdivision (b) permits the use of answers to interrogatories to create a triable issue of fact. While that is generally true, appellants ignore the court's ruling that the interrogatories cited by appellants were inadmissible because the answers were based on information and belief, not personal knowledge. Furthermore, although we need not address the issue, we have serious doubts that in demonstrating the existence of a triable issue of fact to the appellate court, a party can cite to deposition testimony not specifically referenced in the summary judgment motion itself, especially in a case such as this one in which the lodged depositions consisted of over 1,500 pages.

### DISPOSITION

The judgment is reversed. Appellants to recover costs on appeal.

Lillie, P. J., and Johnson, J., concurred.