NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0077n.06

No. 09-6457

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
**Feb 04, 2011**
LEONARD GREEN, Clerk

SITEWORKS SOLUTIONS, LLC,           )
           )
    Plaintiff-Appellant,         )
           )
v.                      )   ON APPEAL FROM THE UNITED
           )   STATES DISTRICT COURT FOR
ORACLE CORPORATION; OIC ACQUISITION V  )   THE WESTERN DISTRICT OF
CORPORATION,                )   TENNESSEE
           )
    Defendants-Appellees.     )
           )
           )

Before: NORRIS, COLE, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. This case arises from a contract between SiteWorks Solutions and Oracle. SiteWorks is a small software company, Oracle a very large one. In 2003, Oracle offered to buy the rights to SiteWorks' products in exchange for $4.5 million up front and 15% of all licensing fees, capped at $5 million, from sales of SiteWorks' products for 5 years. During negotiations, SiteWorks sought a guaranteed minimum licensing payment and a guaranteed number of developers working on its products for two years. Oracle refused to include either guarantee in the contract. SiteWorks agreed to the contract anyway.

The contract provides that Oracle has "sole discretion over all development, marketing and sales decisions for" the SiteWorks products. The contract also says that it "set[s] forth the entire

understanding of the Parties relating to the subject matter thereof and supersede[s] all prior agreements and understandings among or between any of the parties."

Two years after signing the deal, Oracle acquired Siebel, another large software company. Siebel made a product that Oracle thought was superior to SiteWorks' products.  So Oracle shelved SiteWorks' products and shifted its resources to Siebel's; and that meant that SiteWorks stopped receiving any licensing fees.  SiteWorks eventually sued Oracle under various theories of contract and tort.  The district court granted summary judgment to Oracle as to all of SiteWorks' claims. SiteWorks brought this appeal.

We review the district court's decision de novo, drawing all reasonable factual inferences in favor of SiteWorks.  *See Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 476 (6th Cir. 2010). The parties agree that California law applies to their dispute because that is what the contract says; and so that is the law we apply here.  *See Pivnick v. White, Getgey & Meyer Co., LPA*, 552 F.3d 479, 484 (6th Cir. 2009).

SiteWorks first claims that Oracle breached the contract by shelving its products after only two years.  But that is another way of saying Oracle chose to stop developing, marketing, and selling the products; and the contract says Oracle has "sole discretion" over all of those things.  Oracle merely exercised that discretion, which means that Oracle did not breach the contract's terms.

SiteWorks claims that Oracle nonetheless breached an implied duty of good faith.  That duty only arises, however, when necessary to protect "the clear and obvious intent of the parties."  *See Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (Cal. Ct. App. 1995).  There is no such necessity here, because Oracle only did what the contract plainly said it could do.  Similarly, we

reject SiteWorks' claim that Oracle breached an alleged promise to dedicate 15 developers to SiteWorks' products for 2 years. That alleged promise was verbal, and conflicts with the contract's terms. So the district court properly rejected the claim. *See Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 646 (Cal. 1968).

SiteWorks next claims that, during negotiations, Oracle fraudulently concealed facts showing that it was then contemplating a merger with Siebel. As an initial matter, we doubt whether there *was* much to disclose in 2003 regarding the Siebel deal, since it did not go forward for another two years. *See Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 613 (Cal. Ct. App. 1992). In any event, the fact that Oracle was contemplating a future merger was "readily accessible" to SiteWorks. *See Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 295 (Cal. Ct. App. 2004). Specifically, during the period that SiteWorks and Oracle were negotiating the contract, no less than two stories appeared on page B1 of the *Wall Street Journal* in which Oracle CEO Larry Ellison expressly stated that he had discussed the possibility of a merger with Siebel's CEO. *See* David Bank & William Bulkeley, *In About-Face, Siebel to Deliver Software on Net*, Wall St. J., Oct. 2, 2003, at B1; Mylene Mangalindan, *Software Giants Suit Up for Hardball Competition*, Wall St. J., June 10, 2003, at B1. Suffice it to say that a specifically on-point news story, on the front page of the business section of the most widely circulated newspaper in the country, is readily accessible to a reasonably alert, interested businessperson. SiteWorks points to one undisclosed meeting between Oracle and Siebel in November 2003 that postdates the *Journal* coverage, but that meeting was simply another exploratory discussion. Thus, Oracle did not conceal any "material

information . . . not otherwise available to the other side." *Vega*, 121 Cal. App. 4th at 295. Like the district court, therefore, we see nothing fraudulent in Oracle's actions.

SiteWorks makes an assortment of other claims, none of which have merit. SiteWorks claims that, under the contract, Oracle was conditionally obligated to pay SiteWorks $5 million. But the contract does not say that; it simply requires Oracle to pay SiteWorks 15% of the products' licensing fees for 5 years. SiteWorks also claims that Oracle negligently failed to explain that their contract gave Oracle the freedom to replace SiteWorks' products with competing ones. But those ramifications were clear enough from the contract's terms. Finally, SiteWorks claims that Siebel's product was a "subsequent version" of SiteWorks' products. But there is no evidence at all to support that claim.

A party to a contract is entitled to exercise its rights pursuant to the contract's plain language. That is what Oracle did here. The district court's judgment is affirmed.