Filed 10/21/25  Lombardi v. Meier Law Firm CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PIETRO LOMBARDI, et al., | |
| Plaintiffs and Respondents, | G063859 |
| v. | (Super. Ct. No. 30-2019-01063054) |
| MEIER LAW FIRM, et al., | |
| Defendants and Appellants. | O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David L. Belz, Judge. Affirmed.

Nemececk & Cole, and Kenny C. Brooks for Defendants and Appellants.

No appearance for Plaintiffs and Respondents.

The Meier Law Firm (MLF) and Jonathan Johnson (collectively, defendants) appeal from a judgment that they are liable for financial elder abuse. They raise numerous legal and factual challenges to the judgment, which we address below. We conclude substantial evidence supported the trial court's factual finding of financial elder abuse and reject defendants' other arguments. Accordingly, we affirm.

STATEMENT OF THE CASE

I.

UNDERLYING FACTS

This case involves the trust of Fanny G. Nisttahuz (Fanny). Fanny died on November 14, 2018, at the age of 88. She was survived by her two daughters Pamela and Liza. Pamela is married to Jeffrey Lund (Jeff), although they became estranged and separated in August 2018. They have two sons, Lance and Luke. Liza is married to Pietro Lombardi (Peter), and they have a son named Andre.

On July 28, 2001, Fanny, as settlor, created the Fanny G. Nisttahuz 2001 Revocable Trust, which initially distributed the trust assets equally between Pamela and Liza. On November 11, 2011, Fanny executed a restatement to the trust to provide its assets would be distributed as follows: 25 percent to Liza; 25 percent to Andre; 25 percent to Pamela; and 12.5 percent each to Lance and Luke. Fanny also opened several bank accounts that were outside of the trust (the Outside Accounts). Fanny, Pamela, and Liza were joint owners of these accounts.

In February 2014, Jeff formed Lund Advocacy and Behavioral Services (LABS). In July 2014, Pamela withdrew almost $50,000 from the Outside Accounts to fund LABS. Pamela also signed Fanny's name to a guarantee of an office lease for LABS. On September 9, Fanny removed

Pamela's name from the Outside Accounts. On September 15, Fanny amended the trust to provide that any loan or advance funds made by Fanny to a beneficiary would be deemed as an advancement of the distribution otherwise owing to such beneficiary.

LABS defaulted on the lease in November 2014, and the landlord sued Fanny, the purported guarantor, as well as Jeff and LABS. Fanny settled the lawsuit for $27,500 in January 2015. On January 27, she amended the trust to specifically provide that the funds paid to settle the lawsuit would be deemed a distribution of trust assets to Pamela.

Bryce L. Letterman was Fanny's estate planning attorney from 2001 until March 2018. Letterman prepared the initial trust documents as well as the various amendments. In March 2018, Pamela attempted to set up a meeting with Letterman. He replied he would only meet with Fanny alone, or if Fanny wished, with Pamela and Peter present.

Later that month, Pamela and Jeff took Fanny to defendant MLF to update her trust. MLF was paid a flat fee of $5,000, and received no other payments from anyone in the matter.

On April 24, 2018, Fanny signed a restatement of her trust (the April 24, 2018 Restatement). Jessica Kiely, a contract attorney with MLF, prepared the documents using an estate planning drafting software program called "Wealth DocX." The restatement provided that Fanny's residence would be distributed to the special needs trusts for Lance and Luke, and the remainder of the trust assets would be distributed 10 percent to Luke's special needs trust, 10 percent to Lance's special needs trust, and 80 percent to Andre. Pamela no longer being a beneficiary of the April 24, 2018 Restatement meant the money she withdrew from the Open Accounts in 2014

3

and the settlement Fanny paid as a result of Jeff's failed business venture would no longer count as an advancement against any beneficiary.

On June 27, Fanny, Jeff, Peter, and Liza met with defendant Jonathan at MLF's office to review the terms of the April 24, 2018 Restatement. This was the first time Peter and Liza learned of the terms of the restatement. Jonathan was MLF's Chief Operating Officer, but not an attorney. At the time, his wife Bonnie Johnson was MLF's receptionist and a California notary public.

On July 11, Jeff emailed Jonathan suggesting the trust be amended and restated to provide a one-third distribution of all assets to Lance, Luke, and Andre. Neither Liza nor Pamela would be beneficiaries.

On July 31, Fanny fell and was admitted to Hoag Hospital. On August 4, she was transferred to Crystal Cove Recovery Center. On August 16, 2018, Fanny signed a restatement of her trust (the August 16, 2018 Restatement). Jeff, Peter, Liza, Jonathan, and Bonnie were present. Bonnie notarized the document. Relevant to this case, the parties disputed whether the restatement Fanny signed provided a distribution to Liza. The only extant signed document provides the trust assets would be divided equally among Lance, Luke, Andre and Liza.

Fanny died on November 14. Upon her death, Liza became the sole owner of the Outside Accounts, totaling $138,675.28. Jeff, Lance, and Luke resided at Fanny's residence from the time of her death until July 31, 2021, without paying any rent.

4

## II.

### PETITIONS

On January 19, 2022, Jeff filed a verified Third Amended Petition (TAP). As explained in Jeff's trial brief, the petition alleged defendants had committed legal malpractice and engaged in fraud by conspiring with Peter and Liza to alter the testamentary terms of the August 16, 2018 Restatement by adding Liza as a beneficiary, even though Fanny had executed a version that only provided a one-third distribution of trust assets to Lance, Luke, and Andre. The TAP sought, among other things, a judicial determination of the validity of the August 16, 2018 Restatement; an order removing Peter as co-trustee; a finding of fraud for alteration of notarized documents; and a finding of financial elder abuse against Peter, Liza, and Jonathan.

Jeff's TAP had alleged a fraud claim against Jonathan for alteration of notarized documents, and claims for professional negligence and breach of fiduciary duties against MLF. On January 9, 2023, Jeff stipulated and agreed that upon entry of final judgment in the case, judgment on these three claims would be entered against him and in favor of defendants. However, he expressly reserved his financial elder abuse claim, which sought recovery of attorney fees pursuant to Welfare & Institutions Code section 15657.5, for trial.[1] The stipulation was entered as an order of the court, and was referenced in the final judgment.

As relevant to this case, in the financial elder abuse cause of action, Jeff's TAP alleged Peter, Liza, MLF and Jonathan committed financial elder abuse. The TAP re-alleged and incorporated all prior

---

[1] All further statutory references are to the Welfare & Institutions Code, unless stated otherwise.

5

allegations, including those related to the fraud claim against Jonathan. It further alleged that "the conduct of [defendants], and each of them, as alleged herein constituted 'financial abuse,' as defined in the Elder [and Dependent Adult Civil Protection] Abuse Act." It goes on to detail the Lombardis' alleged wrongdoing in adding Liza as a beneficiary and Jonathan's assistance in that wrongdoing.

Peter and Liza also filed a petition in the case. Their petition sought, among other things, recovery of unpaid rent from Jeff, Lance, and Luke, and a finding of financial elder abuse against Jeff.

III.

STATEMENT OF DECISION AND JUDGMENT

Following a bench trial on the petitions, the trial court issued a tentative and proposed statement of decision. The parties then filed objections, which the court considered before issuing its Final Statement of Decision and Judgment on December 8, 2023.

As to the issues raised in the Lombardis' petition, the court found that Jeff had committed financial elder abuse as to the April 24, 2018 Restatement. It revoked the April 24, 2018 Restatement because of Jeff's undue influence, and awarded the Lombardis attorney fees against him under section 15657.5. Finally, it ordered Jeff to pay $76,500 for unpaid rent.

As to the issues raised in Jeff's petition, the court granted the request to remove Peter as a co-trustee because Peter failed to change the beneficiary designation for the Outside Accounts so the trust, rather than Liza, would be the beneficiary. However, it concluded the evidence was insufficient to find that Peter and Liza had committed financial elder abuse, fraud, or had conspired with Jonathan to alter the terms of the August 16, 2018 Restatement.

6

As to the claims relating to Jonathan and the August 16, 2018 Restatement, the court granted "the request for a finding of fraud for alteration of notarized documents against Jonathan," and found Jonathan had committed financial elder abuse.

Specifically, it found Jonathan had altered the August 16, 2018 Restatement after Fanny had signed it to add Liza as a beneficiary, and had fraudulently concealed the alteration from Fanny. The court's finding that the restatement signed by Fanny did not include Liza as a beneficiary was supported by the following evidence. On July 11, 2018, Jeff emailed Jonathan suggesting that the trust be amended to provide a one-third distribution of all assets to Lance, Luke and Andre. Jonathan replied, "'[w]e can certainly alter the trust to an equal 3 way split as I know that was her intention.'" Jonathan then emailed Kiely to ask her to make the change to the trust. After several email exchanges, on August 7, 2018, Jonathan confirmed with Kiely that the change would be "'[one-third] of everything including the house, no separate distribution.'" After Fanny signed the August 16, 2018 Restatement, on August 27, 2018, Peter sent an email to Jonathan raising concerns about "some errors in the revocable trust." The first error was the wrong middle name for Andre. The second error, "more serious is that my wife Liza seems to have been disinherited." A screenshot from the Wealth DocX program used to create the document showed Jonathan had modified the document on August 28, 2018 at 1:58 p.m. On August 30, Jonathan emailed Peter that Andre's name had been corrected.

In finding Jonathan fraudulently replaced pages of the August 16, 2018 Restatement after it was signed by Fanny to add Liza as a 25 percent beneficiary, the trial court rejected Jonathan's claim that he had spoken with Fanny about the allocations before the signing. It concluded:

7

"Jonathan's actions constituted a taking of property of Fanny with the intent to defraud." Fanny was harmed by his actions because "a trustworthy version of a restated trust is not available resulting in litigation and loss to the trust." It found "the fraudulent acts of Jonathan by concealing the altering of the August 16, 2018 restatement after it was signed constitutes financial elder abuse pursuant to. . . [section] 15610.30." It granted the request for an award of attorney fees against Jonathan and his employer MLF under section 15657.5.

As a result of Jonathan's wrongdoing, there was no valid and trustworthy version of the August 16, 2018 Restatement. Thus, the court found the signed August 16, 2018 Restatement was invalid and unreliable, and it revoked the restatement. It further concluded there was insufficient evidence that the unaltered August 16, 2018 Restatement represented Fanny's testamentary intent. It rejected reliance on the April 24, 2018 Restatement because it had concluded "[t]he April 24, 2018 Restatement is not credible and is rescinded because of the finding of undue influence against Jeff."

The court then stated: "Having made findings that the April 24, 2018 Restated Trust and the August 16, 2018 Restated Trusts are not reliable trust documents expressing the valid intent of Fanny, the court finds the operative valid trust document for Fanny is the November 11, 2011 Restatement as amended on September 15, 2014 and January 27, 2015." The court concluded the operative documents reflect Fanny's "longstanding desire to split her estate 50/50" between the Lund side and the Lombardi side of the family. As a result, it concluded the funds in the Outside Accounts should not go to Liza but be returned to the trust for distribution.

8

After entry and service of the judgment, defendants timely noticed an appeal.

## DISCUSSION

Defendants raise numerous challenges to the trial court's final statement of decision and judgment, which we address in order.

## I.

## FRAUD CLAIM

In its final statement of decision and judgment, the trial court granted Jeff's request to find Jonathan had committed fraud by altering notarized documents. Defendants contend the court "adjudicated Jeff's cause of action for [f]raud[ulent] [a]lteration of [n]otarized [d]ocuments *against* Jonathan." They argue the "adjudication" should be reversed because the parties stipulated that the fraud claim had no damages, would not be litigated at trial, and after trial, would be adjudicated in favor of Jonathan. This stipulation was entered as an order of the court. The court did not adjudicate the fraud claim against Jonathan. Rather it found Jonathan had fraudulently concealed his alteration of notarized documents, and that this wrongful conduct constituted financial elder abuse. Stated differently, the court found Jonathan had committed fraud but did not adjudicate a fraud claim against him. Rather, the court adjudicated a financial elder abuse claim based on the same facts that would have supported a fraud claim. We thus reject defendants' claim of error because there was no erroneous adjudication of a fraud claim against Jonathan.

## II.

## FINANCIAL ELDER ABUSE CLAIM

Defendants contend the financial elder abuse claim against them should be reversed for multiple reasons.

9

First, they argue the claim asserted in Jeff's petition was that Jonathan had assisted the Lombardis in committing a fraud on Fanny, not that he directly committed financial elder abuse. The trial court, however, found insufficient evidence the Lombardis committed elder abuse or conspired with Jonathan to fraudulently change the trust. Thus, they contend the financial elder abuse claim pled in the TAP was not proven. We disagree because the allegations in Jeff's petition can be construed as stating two bases for liability for financial elder abuse. One was assisting the Lombardis' financial elder abuse, which the court rejected. The other basis was for directly perpetrating financial elder abuse, which the court found true. As noted above, in the cause of action for financial elder abuse asserted against Jonathan and the Lombardis, it was alleged that "the conduct of [defendants], and each of them, as alleged herein constituted 'financial abuse,' as defined in the Elder [and Dependent Adult Civil Protection] Abuse Act." Thus, the petition alleged Jonathan directly committed financial elder abuse.

Next, defendants contend that Jonathan did not fraudulently alter the August 16, 2018 Restatement because Liza actually was a named beneficiary in the document signed by Fanny. We reject this claim because substantial evidence supported the trial court's factual finding that Liza was not a named beneficiary in the restatement signed by Fanny. (See *SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462 ["The substantial evidence standard applies to both express and implied findings of fact made by the superior court in its statement of decision rendered after a nonjury trial"].) This factual finding was supported by the various emails referenced above. The emails showed Jonathan planned to have the restatement provide that all assets would be distributed to Fanny's

10

three grandchildren only. Peter's email to Jonathan after Fanny signed the restatement showed Liza's name was not on the signed document because he asked why Liza had been disinherited. Defendants note contrary testimony presented at trial, but on substantial evidence review, we must affirm if there is any substantial evidence, even if contradicted, to support the trial court's finding. (See *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582 ["When a civil appeal challenges findings of fact, the appellate court's power begins and ends with a determination of whether there is any substantial evidence—contradicted or uncontradicted—to support the trial court findings"].)

In the alternative, defendants argue that Jonathan's wrongful conduct was not financial elder abuse because the resulting altered document "more accurately reflected Fanny's wishes" to include Liza as a beneficiary notwithstanding Jeff's wrongful conduct in unduly influencing Fanny to exclude Liza. We reject this argument. Two wrongs (Jonathan's and Jeff's conduct) do not make a right. The fact that Jonathan's wrongful conduct happened to ameliorate some of the harms of Jeff's wrongful conduct does not immunize his conduct if, as discussed next, it meets the statutory definition of financial elder abuse.

Under section 15610.30, subdivision (a)(1), financial abuse of an elderly occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." Here, the trial court found that "Jonathan's actions constituted a taking of property of Fanny with the intent to defraud." It also found Fanny was harmed by his actions because "a trustworthy version of a restated trust is not available resulting in litigation and loss to the trust."

11

Defendants contend there is no evidence Jonathan intended to defraud Fanny. We disagree. "'[A]n intent to defraud is an intent to *deceive another person* or to induce that person to part with property or to alter that person's position to [her] injury or risk, and to accomplish that purpose by some false statement, false representation of fact, wrongful concealment or suppression of truth, or by any other artifice or act *designed to deceive*." (*People v. Booth* (1996) 48 Cal.App.4th 1247, 1253.) In the context of common law forgery, which ""'is the false making or material altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability,'"" (*Lewis v. Superior Court* (1990) 217 Cal.App.3d 379, 392), "[m]aking virtually any kind of false document affords an inference that the maker intends to deceive someone." (*Id.* at p. 388.) Here, an intent to defraud can be found from Jonathan's act of altering the material terms of a document after it has been executed, and then concealing the alteration, resulting in an increased risk of challenges to Fanny's estate planning.

Defendants further contend there is no evidence Fanny detrimentally relied on any false or deceptive conduct. Because Jonathan, who acted as the agent for Fanny's estate planning lawyer, concealed the alteration from Fanny, the nature of her reliance differs from that of a typical fraud victim. "[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the

12

concealment or suppression of the fact, the plaintiff must have sustained damage." (*Marketing West, Inc. v. Sanyo Fisher* (USA) Corp. (1992) 6 Cal.App.4th 603, 612–613.) Thus, the evidence need only show that Fanny would have acted differently had she known about the alteration of the document.

Given that Fanny updated her estate planning documents to equalize the distribution from her estate to Pamela's family after Pamela withdrew monies from the Outside Accounts for LABS, it is reasonable to infer Fanny would have reviewed or amended the altered restatement to ensure that the one-fourth distribution to Liza would not result in an unequal distribution of her estate between Pamela's and Liza's families. Absent additional changes such as requiring the funds in the Outside Accounts to be returned to the trust for distribution, as the trial court ordered in the judgment, the additional distribution would have resulted in unequal division of Fanny's assets. We thus conclude reliance was shown.

The trial court found Fanny was harmed by Jonathan's conduct because "a trustworthy version of a restated trust is not available resulting in litigation and loss to the trust." Defendants contend there was no damages because: (1) the lack of validity and trustworthiness of the August 16, 2018 Restatement was not caused by Jonathan but rather by Jeff's undue influence; and (2) there was no litigation. However, this case and appeal is litigation caused by the alteration. Additionally, the court did not invalidate the August 16, 2018 Restatement because of Jeff's undue influence. Rather, it

13

invalidated the August 16, 2018 Restatement due to Jonathan's alteration of the document.[2]

The gist of defendants' argument is that Fanny suffered no harm because Jonathan's alteration merely conformed the Restatement to her true testamentary intent. However, as discussed above, the trial court found that Fanny's testamentary intent, as evidenced by the November 11, 2011 Restatement and its amendments, was that her estate be equally divided between the Lunds and Lombardis. Jonathan's alteration added Liza as a beneficiary, which equalized the raw distribution percentages between the two families. However, it did not include the Outside Accounts as part of the trust assets or the offset for the LABS settlement and Pamela's withdrawals, which were also part of Fanny's wishes. Moreover, even if the alteration perfectly conformed to Fanny's wishes, it caused harm to Fanny because it was done surreptitiously. The hidden nature of the alteration would have allowed someone like Jeff to challenge the altered Restatement on the ground it did not represent Fanny's true testamentary intent because it was altered without her knowledge or consent.

Defendants recycle their prior argument of lack of damages to claim public policy militates against finding elder abuse in this case. We rejected defendants' damages argument above, and accordingly reject their derivative public policy claim. Defendants also argued the financial elder

[2] At oral argument, defendants acknowledged the trial court invalidated the signed August 16, 2018 Restatement on the basis of Jonathan's alteration, but argued the court found the unaltered August 16, 2018 Restatement was the product of Jeff's undue influence. They cite to a part of the statement of decision where the court found the "signed Restatement was the product of undue influence." After reviewing the referenced statement in context, we conclude the court was referring to the signed April 24, 2018 Restatement only.

14

abuse claim was brought by Jeff with ill intention, i.e., solely to generate attorney fees. The trial court, however, found the financial elder abuse had merit, and we have affirmed that ruling. It would be against public policy in this case to exonerate a wrongdoer merely because the person who discovered and prosecuted the abuse may have ulterior motives.

Finally, defendants argue Jeff was not entitled to recover attorney fees for prevailing on his claim that Jonathan had committed financial elder abuse because: (1) he did not prevail on his other claims; and (2) he has unclean hands (due to his undue influence in connection with the April 24, 2018 Restatement he procured and his prior fraud against Fanny, i.e., the LABS fiasco). Section 15657.5, subdivision (a) provides that "[w]here it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, in addition to compensatory damages and all other remedies otherwise provided by law, the court shall award to the plaintiff reasonable attorney's fees and costs." Thus, the attorney fees are mandatory "regardless of whether the plaintiff is awarded any other form of relief." (*Arace v. Medico Investments, LLC* (2020) 48 Cal.App.5th 977, 983, fn. omitted.) Accordingly, Jeff's failure to prevail on his other claims does not preclude him from recovering attorney fees on the financial elder abuse claim.

As for the doctrine of unclean hands, we are not persuaded it would bar recovery of attorney fees in this case. "The misconduct that brings the clean hands doctrine into play must relate directly to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice. The determination of the unclean hands defense cannot be distorted into a proceeding to try the general morals of the parties." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76

15

Cal.App.4th 970, 979.) Here, Jeff's undue influence on Fanny did not directly relate to Jonathan's alteration to the August 16, 2018 Restatement. Indeed, defendants argue the alteration was contrary to Jeff's improper motive. Thus, the doctrine does not bar Jeff's recovery of attorney fees under section 15657.5.

## DISPOSITION

The judgment is affirmed. Because no respondent made an appearance, no costs are awarded.


DELANEY, ACTING P.J.


WE CONCUR:


GOODING, J.


SCOTT, J.