Filed 10/28/13; pub. order 11/22/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| IRMA MONCADA et al., | H036728 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. CV169097) |
| v. | |
| WEST COAST QUARTZ CORP. et al., | |
| Defendants and Respondents. | |

This case involves a dispute between former employees of a company and the company's sole shareholders over a promised retirement bonus that was never paid.

Plaintiffs, Irma Moncada, Randy Morris and Everardo Serrano, worked for West Coast Quartz Corporation (West Coast). Defendants Paul Maloney and Nancy Tkalcevic were the owners and sole shareholders of West Coast. Defendants were preparing to sell West Coast, and wanted plaintiffs to continue to work for the company until the sale was complete. To accomplish that end, defendants repeatedly promised plaintiffs that if they continued to work for West Coast until the sale, they would be paid a bonus from the sale proceeds that would be sufficient for them to retire. Plaintiffs remained at West Coast for five years following defendants' initial promise of the retirement bonus, rejecting job offers from other companies, and opportunities to move out of the area. When defendants sold West Coast in 2009 for approximately $30 million, they did not pay plaintiffs the promised bonus.

Plaintiffs filed suit against defendants for fraud and breach of contract, among other causes of action.  Following the trial court sustaining defendants' demurrer to their first amended complaint with leave to amend, plaintiffs opted to stand on the pleading.  As a result, the trial court dismissed the first amended complaint and entered judgment in favor of defendants.  Plaintiffs appeal the judgment.

## STATEMENT OF THE FACTS[1] AND CASE

In June 2004, the plaintiffs, Ms. Moncada, Mr. Morris and Mr. Serrano, were all key long-term employees of defendant, West Coast.  At the time, the sole shareholders of West Coast were defendants Mr. Maloney, the president and chief financial officer, and Ms. Tkalcevic, the chief executive officer.  On June 22, 2004, Mr. Maloney and Ms. Tkalcevic held a meeting with plaintiffs and other key long-term employees at Ms. Tkalcevic's home.  During the meeting, Ms. Tkalcevic and Mr. Maloney told those present that they were planning to sell West Coast, and the process would take between two and 10 years to complete.  Ms. Tkalcevic and Mr. Maloney also said that they did not want any of the key employees of the company to quit during the sale process, and represented to those present that they would receive stock or stock options in West Coast so that when the company actually sold, they would be rewarded for their loyalty.

Following the meeting in June, seeing no action from defendants regarding the grant of stock or stock options in West Coast, some managers and key employees began to leave the company.  On August 27, 2004, Mr. Maloney told Ms. Moncada that he and Ms.Tkalcevic did not want to reward disloyal employees, and planned to change the way they would reward employees who stayed with the company until the completed sale.  Mr. Maloney told Ms. Moncada that he and Ms. Tkalcevic would pay the employees who stayed with the company a bonus when the company sold that would be enough for the employees to retire.

---

[1] The facts are taken from the first amended complaint.

2

Following Mr. Maloney's first statement of his promise to pay plaintiffs a bonus upon the sale of the company in August 2004, he repeated the promise numerous times whenever an employee expressed doubt or a wish to leave the company. On September 5, 2005, Mr. Maloney told Ms. Moncada that he was increasing her pay and reiterated that she would receive a bonus of enough money to retire when the company was sold. On November 20, 2005, when Ms. Moncada said she wanted to leave the company, Mr. Maloney and Ms. Tkalcevic reiterated their promise that when the company was sold, they would pay her a bonus that would be sufficient to retire. Ms. Moncada continued to work for the company. On August 15, 2006, Mr. Maloney told Mr. Moncada that he and Ms. Tkalcevic were consulting with financial advisors to determine an amount of the bonus for the employees when the company sold that would minimize tax liability.

With regard to plaintiff Mr. Serrano, Mr. Maloney reiterated the same specific promise that if Mr. Serrano continued to work at West Coast until the company's sale, he would be paid a bonus in an amount sufficient for him to retire. Mr. Maloney repeated the promise to Mr. Serrano on Feburary 7, 2005, January 26, 2006, and May 17, 2006, when Mr. Maloney increased Mr. Serrano's pay and gave him an update on the progress of the sale, saying, "[Y]ou guys will get the bonus, enough to retire." On June 3, 2006, Mr. Serrano told Mr. Maloney he was considering moving to Bakersfield. In response, Mr. Maloney reiterated the promise of the bonus if he stayed with West Coast until the sale. Mr. Maloney repeated the terms of the promise on August 25, 2006, and April 14, 2007.

Mr. Maloney reiterated the retirement bonus many times to plaintiff Mr. Morris between 2004 and 2009. Mr. Morris turned down nine offers of employment from other companies during that period in reliance on defendants' promise of a bonus at the time of West Coast's sale.

3

In November 2009, plaintiffs learned that defendants had sold and transferred all of their shares in West Coast for the amount of $30,210,000. Plaintiffs never received the bonus for retirement that defendants promised to them.

In April 2010, plaintiffs filed their original complaint against defendants asserting causes of action for misrepresentation-concealment, breach of contract, promissory estoppel, intentional infliction of emotional distress, estoppel in pais, and violation of Business and Professions Code section 17200.

Defendants demurred to the original complaint and on September 7, 2010, the trial court sustained the demurrer with leave to amend, except as to the cause of action for estoppel in pais, to which the court sustained the demurrer without leave to amend.

Plaintiffs filed a first amended complaint on October 4, 2010, that alleged causes of action for misrepresentation-concealment, breach of contract and implied covenants, promissory estoppel, intentional infliction of emotional distress, and negligent misrepresentation.

Defendants demurred to the first amended complaint. On February 9, 2011, the court sustained the demurrer with leave to amend, except as to the cause of action for intentional infliction of emotional distress, to which the court sustained the demurrer without leave to amend. Plaintiffs did not file a second amended complaint, and instead, chose to stand on the first amended complaint. As a result, the trial court dismissed the first amended complaint pursuant to Code of Civil Procedure section 581, subdivision (f)(2), and entered a judgment in favor or defendants. Plaintiffs filed a notice of appeal of the judgment.

4

Plaintiffs assert on appeal that the trial court erred in sustaining the demurrer to the first amended complaint with leave to amend, and dismissing the action with prejudice. In addition, plaintiffs argue the court erred in sustaining the demurrer to the action for estoppel in pais alleged in the original complaint, without leave to amend.

This appeal involves review of two separate orders. The first is the trial court's order of September 7, 2010, wherein it sustained defendants' demurrer to plaintiffs' cause of action for estoppel in pais without leave to amend. We review this order as an "intermediate ruling . . . which involves the merits or necessarily affects the judgment or order appealed from . . . ." (Code of Civil Procedure § 906.)

The second order was on February 9, 2011, when the trial court sustained defendants' demurrer to the first amended complaint with leave to amend. As this court stated in *County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, "[w]hen a demurrer is sustained with leave to amend, and the plaintiff chooses not to amend but to stand on the complaint, an appeal from the ensuing dismissal order may challenge the validity of the intermediate ruling sustaining the demurrer. [Citation.] On the other hand, where the plaintiff chooses to amend, any error in sustaining the demurrer is ordinarily waived." (*Id.* at p. 312.)

The issue raised in this appeal is entirely a matter of law and we hold that the first amended complaint states a cause of action. A demurrer is properly sustained when the complaint "does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subds. (e).) "On appeal from a dismissal following the sustaining of a demurrer, this court reviews the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory. . . . [¶] Because the function of a demurrer is not to test the truth or accuracy of the facts alleged in the complaint, we assume the truth of all properly pleaded factual allegations. [Citation.] Whether the

5

plaintiff will be able to prove these allegations is not relevant; our focus is on the *legal* sufficiency of the complaint." (*Los Altos Golf and Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 203.) "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

### *Misrepresentation/Concealment*

Plaintiffs assert the first amended complaint alleges facts sufficient to state a cause of action for misrepresentation-concealment. Plaintiffs allege that defendants concealed the fact that they wanted plaintiffs to remain employed at West Coast to make the company more attractive to potential buyers, and only intended to give plaintiffs a nominal or no bonus for remaining employed.

Concealment is a species of fraud or deceit. (See Civ. Code, §§ 1710, subd. (3), 1572, subd. (3); *Lovejoy v. AT & T Corp.* (2004) 119 Cal.App.4th 151, 158 (*Lovejoy*).) "[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." (*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.* (1992) 6 Cal.App.4th 603, 612-613; *Lovejoy*, *supra*, 119 Cal.App.4th at pp. 157-158.)

"Promissory fraud," as is alleged in this case, is a subspecies of the action for fraud and deceit. "A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied

misrepresentation of fact that may be actionable fraud.  [Citations]"  (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

Every element of a fraud cause of action must be specifically pleaded.  (*Service By Medallion, Inc. v. Clorox Company* (1996) 44 Cal.App.4th 1807; *Tarmann v. State Farm Mut. Auto. Ins. Co*. (1991) 2 Cal.App.4th 153, 157.)  This pleading requirement of specificity applies not only to the alleged misrepresentation, but also to the elements of causation and damage.  As this court stated in *Service By Medallion, Inc*., "In order to recover for fraud, as in any other tort, the plaintiff must plead and prove the 'detriment proximately caused' by the defendant's tortious conduct.  (Civ. Code, § 3333.)  Deception without resulting loss is not actionable fraud.  [Citation.]  'Whatever form it takes, the injury or damage must not only be distinctly alleged but its causal connection with the reliance on the representations must be shown.' "  (*Service By Medallion, Inc. v. Clorox Company, supra*, 44 Cal.App.4th at p.1818; see also *Cooper v. Equity Gen. Insurance* (1990) 219 Cal.App.3d 1252, 1262 ["in California, every element of a cause of action for fraud must be alleged both factually and specifically, and the policy of liberal construction of pleadings will not be invoked to sustain a defective complaint"].)

The allegations in the first amended complaint of plaintiffs' damages as a result of defendants' fraud include the following:  "[a]s a direct and proximate result of the concealment, failure to inform and representations of Defendants, Plaintiffs have:
[¶]  A.  Been damaged in an amount equal to the monies which would have allowed them to retire and stop working when West Coast was sold; [¶]  B.  Sustained damages in the form of missed opportunities for other employment and residence opportunities;
[¶]  C.  Sustained damages in the form of uncompensated time for work and travel over and above [the] normal in continuing to advance the profitability of West Coast and take over the duties and responsibilities of managers and key employees who had left West Coast; [¶]  D.  Sustained damages in the form of emotional distress and mental anguish.

7

[¶] The exact amount of the aforesaid damages is not yet fully ascertained but is within the jurisdictional limits of this Court and will be established according to proof at the time of trial."

Plaintiffs' allegations, if true, would establish all the elements of promissory fraud. As detailed above, plaintiffs allege that, in order to induce them to continue to work at West Coast until the company sold, defendants intentionally represented to plaintiffs that defendants would pay plaintiffs a bonus at the time of the sale that would be sufficient for plaintiffs to retire. Plaintiffs further allege that defendants' representations were false, in that defendants intended to pay them a nominal bonus (or no bonus at all) at the time of sale. Plaintiffs allege they justifiably relied on the representations, because defendants repeatedly assured them of the bonus. Plaintiffs further allege they did not seek alternative employment or residential opportunities and remained at West Coast because of the promise of the bonus. These allegations adequately state a cause of action for promissory fraud as traditionally understood.

### *Breach of Contract/Implied Covenants*

Plaintiffs assert the allegations of breach of contract are sufficiently stated in the first amended complaint, and that the terms of the contract between them and defendants were certain and definite.

The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. " 'Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable.' " (*Ladas v. California State Automobile Assn.* (*Ladas*) (1993) 19 Cal.App.4th 761, 770 (*Ladas*).)

" 'In considering expressions of agreement, the court must not hold the parties to some impossible, or ideal, or unusual standard. It must take language as it is and people as they are. All agreements have some degree of indefiniteness and some degree of

8

uncertainty.' " (*Rivers v. Beadle* (1960) 183 Cal.App.2d 691, 695.) Moreover, " '[t]he law leans against the destruction of contracts because of uncertainty and favors an interpretation which will carry into effect the reasonable intention of the parties if it can be ascertained.' " (*Id.* at p. 697.)

In the instant case, defendants told plaintiffs that if they stayed and continued to work for West Coast until the company sold, defendants would give plaintiffs bonuses that would be sufficient for plaintiffs to retire. The agreement between plaintiffs and defendants was clear and certain; the parties knew their obligations under the agreement. Moreover, the agreement was also sufficiently certain to determine the existence of a breach. Plaintiffs stayed and worked at West Coast from the time of the initial promise in 2004, until 2009 when West Coast was sold for approximately $30 million. Defendants did not pay plaintiffs the promised bonus at the time of the sale.

Defendants assert that the promise of an amount sufficient to retire is vague and unenforceable, because it is an unspecified amount and subject to different interpretations. However, in *Sabatini v. Hensley* (1958) 161 Cal.App.2d 172, 177, the court affirmed a jury verdict that awarded an unpaid bonus to an employee. Although the employer argued the offer of the bonus was unenforceable because the amount was not fixed, and there was no formula to set the amount agreed upon by the parties, the court held, "The failure to specify the amount or a formula for determining the amount of the bonus does not render the agreement too indefinite for enforcement. It is not essential that the contract specify the amount of the consideration or the means of ascertaining it. (Civ. Code, § 1610.)." (*Sabatini, supra*, 161 Cal.App.2d at p. 175.)

Defendants cite *Rochlis v. Walt Disney Co.* (1993) 19 Cal.App.4th 201 (*Rochlis*), overruled on other grounds in *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1251, and *Ladas, supra,* 19 Cal.App.4th 761, for the proposition that the terms of the

9

alleged agreement between themselves and plaintiffs were too vague and indefinite to be enforceable.

In *Ladas,* the unenforceable promise was "An amorphous promise to 'consider' what employees at other companies [were] earning" when setting commission rates. In finding the promise unenforceable, the court noted the numerous uncertainties which would defeat enforcement of the promise, asking "By what standard would a court or a jury determine that the company failed to meet its obligation to 'consider' commissions earned by competitors?" and concluding that "The nature of the obligation asserted provides no rational method for determining breach or computing damages. (*Ladas, supra,* 19 Cal.App.4th at p. 771.)

Here, unlike *Ladas*, defendants promised to pay plaintiffs a bonus upon the sale of West Coast. A court or jury could easily determine if defendants failed to meet this obligation by evaluating whether such bonus was paid. Moreover, unlike *Ladas,* where damages would be difficult to compute because the promise was to consider what other employees were earning, the promise here was to pay plaintiffs an amount that would be sufficient to retire. As stated in the first amended complaint, the bonus amount would be determined "using information about the Plaintiffs' debts and obligations, their lifestyles at that time and actuarial information sufficient to allow financial planners to set a specific amount for each of them given their specific circumstances at that time." Contrary to defendants' argument, retirement amounts are not vague or indefinite; rather, they are readily determined using standard formulae and actuarial tables.

*Rochlis*, in which an employee alleged breach of an employment contract and constructive discharge, is also not on point. In *Rochlis,* the plaintiff claimed that the defendant had promised that he would receive salary increases and bonuses "appropriate" to his responsibilities and he would have "active[] and meaningful[]" participation in creative decisions. (*Rochlis*, *supra*, 19 Cal.App.4th at p. 213.) The

10

court held that these terms were too vague and indefinite, and thus could not support a breach of contract claim. (*Id*. at pp. 213-214.) The court also reasoned the plaintiff's claim was beyond regulation by the court, because it would require the court to become involved in the daily operations of a business. (*Id*. at p. 214.)

Our Supreme Court later commented on *Rochlis* in *Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454 (*Scott*), disapproved on other grounds in *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 352, footnote 17, "courts will not enforce vague promises about the terms and conditions of employment that provide no definable standards for constraining an employer's inherent authority to manage its enterprise. (*Scott, supra*, 11 Cal.4th at p. 473.) The claim of vagueness of contract terms was raised in *Scott* following a jury trial; not at the pleading stage as we are in the present case. The Supreme Court found the implied in fact employment contract was enforceable, and ordered the original jury verdict that the contract was valid reinstated. (*Ibid*.)

Defendants' promise in this case was not vague, nor did it constrain defendants from managing West Coast. (See, e.g., *Scott, supra*, 11 Cal. 4th at p. 473.) Enforcing defendants' promise would not potentially propel the court into daily operations of the company. (See, e.g., *Rochlis*, *supra*, 19 Cal.App.4th at p. 213.) The promise was clear and definite: continue working at West Coast until the company is sold, and at that time, we will pay you a bonus that will enable you to retire. Plaintiffs understood defendants' promise, and acted on their end by continuing to work at West Coast until the company was sold. The first amended complaint alleges facts sufficient to state a cause of action for breach of contract.

### *Promissory Estoppel*

Plaintiffs assert the allegations of promissory estoppel are adequately stated in their first amended complaint.

11

"In California, under the doctrine of promissory estoppel, 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.' [Citations.] Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.' " (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310.) The elements of promissory estoppel are (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages " 'measured by the extent of the obligation assumed and not performed.' " (*Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 692.)

Plaintiffs' allegations in the first amended complaint satisfy the requirements of promissory estoppel. Specifically, defendants promised to pay them an amount sufficient to retire upon the sale of West Coast if they remained employed. As discussed above in regard to the breach of contract cause of action, plaintiffs' promise was sufficiently clear and definite. Plaintiffs relied on this promise to their detriment by remaining employed at West Coast, and forgoing other employment and residential opportunities.

### *Intentional Infliction of Emotional Distress*

Plaintiffs argue the allegations in the first amended complaint adequately state a cause of action for intentional infliction of emotional distress.

" 'A cause of action for intentional infliction of emotional distress exists when there is " ' " '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate

12

causation of the emotional distress by the defendant's outrageous conduct.' " ' "
[Citations.]' [Citation.]" (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1609.)

In order for conduct to be considered outrageous for the purpose of tort liability, it "must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." (*Trerice v. Blue Cross of America* (1989) 209 Cal.App.3d 878, 883; see, e.g., *Fletcher v. Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 397-398 [insurance agent's threatened and actual refusals to pay and threatening communication in bad faith to settle nonexistent dispute]; *Alcorn v. Anbro Engineering Inc.* (1970) 2 Cal.3d 493, 496-497 [supervisor shouting insulting epithets, terminating employment, and humiliating plaintiff]; *Golden v. Dungan* (1971) 20 Cal.App.3d 295, 305 [process server knowingly and maliciously banging on door at midnight].)

Here, the allegations in the first amended complaint consist of defendants' misleading plaintiffs into believing they would be compensated in an amount that would allow them to retire if they continued to work for West Coast until the company was sold. While the allegations of defendant's conduct if true, demonstrate a callous disregard for plaintiffs' professional and personal well being, the alleged conduct as stated is not extreme or outrageous to support a cause of action for intentional infliction of emotional distress.

### *Negligent Misrepresentation*

In addition to the cause of action for promissory fraud, plaintiffs also allege a cause of action for negligent misrepresentation related to defendants' promise of a retirement bonus in their first amended complaint.

In *Intrieri v. Superior Court* (2004) 117 Cal.App.4th 72 (*Intrieri*), this court stated the elements for a cause of action for negligent misrepresentation, and the difference between that and an action for fraud. "The elements of a cause of action for fraud and a cause of action for negligent misrepresentation are very similar. Pursuant to Civil Code

section 1710, both torts are defined as deceit. However, the state of mind requirements are different. 'Fraud is an intentional tort, the elements of which are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. [Citation.]' [Citation.] Negligent misrepresentation lacks the element of intent to deceive. Therefore, ' "[w]here the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit." [Citation.]' [Citations.]" (*Id.* at pp. 85-86.)

In this case, plaintiffs allege the following in their cause of action for negligent misrepresentation: "Defendants were aware that the promises and representations made to Plaintiffs were not accurate in light of information they had in hand at that time as alleged hereinabove. Defendants also undertook to conceal from Plaintiffs their lack of information and failure to make the promises and representations accurately. [¶] . . . The promises and representations by Defendants as aforesaid were made with the intent to induce Plaintiffs to act as set forth hereinabove."

Plaintiffs' allegations do not state a cause of action for negligent misrepresentation. Notably, there is no allegation that defendants made any representation to plaintiffs " ' "honestly believing that [the representations] are true, but without reasonable ground for such belief." ' " (*Intrieri, supra,* 117 Cal.App.4th at p. 86.) Indeed, the allegations of misrepresentation contain the element of intent, and knowledge that the information was inaccurate. As such, the allegations are inconsistent with the requirements for a cause of action for negligent misrepresentation.

### *Estoppel in Pais*

In the original complaint, plaintiffs alleged a cause of action for estoppel in pais. The trial court sustained defendants' demurrer to that cause of action without leave to amend on the ground that such a cause of action may not be asserted in California. On

14

appeal, plaintiffs argue the trial court erred in sustaining the demurrer, and that estoppel in pais is a valid cause of action in California.

"Equitable estoppel, originally known as estoppel in pais, and also called estoppel by conduct, is simply stated. 'Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.' [Citations.] The doctrine is defensive in nature only, and 'operates to prevent one [party] from taking an unfair advantage of another.' [Citation.]" (*San Diego Municipal Credit Union v. Smith* (1986) 176 Cal.App.3d 919, 922-923.)

In *Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, the court reiterated that California does not recognize an independent cause of action for equitable estoppel: "[A]s Witkin ... explains, ' "[t]he [equitable estoppel] doctrine acts defensively only." ' (13 Witkin, Summary of Cal. Law [(10th ed. 2005)] Equity, § 190, p. 527; see also *Central National Ins. Co. v. California Ins. Guarantee Assn.* (1985)165 Cal .App.3d 453, 460 [equitable estoppel 'must be pleaded . . . either as a part of the cause of action or as a defense'].) As a stand-alone cause of action for equitable estoppel will not lie as a matter of law . . . ." (*Id.* at p. 1463.)

As estoppel in pais cannot be stated as an independent cause of action in California, the trial court was correct in sustaining defendant's demurrer to this allegation in the original complaint.

In sum, the first amended complaint alleges facts sufficient to state causes of action for fraud, breach of contract, and promissory estoppel, and fails to adequately allege causes of action for intentional infliction of emotional distress, negligent misrepresentation, and estoppel in pais.

15

**DISPOSITION**

The order sustaining the demurrer to the first amended complaint with leave to amend is reversed. Defendants are ordered to answer the first amended complaint on the causes of action for misrepresentation, breach of contract, and promissory estoppel.

_____
RUSHING, P.J.

I CONCUR:

_____
PREMO, J.

16

BAMATTRE-MANOUKIAN, J., Concurring and Dissenting

I concur with the majority's conclusion that plaintiffs have failed to state causes of action for negligent misrepresentation, intentional infliction of emotional distress, and estoppel in pais. I respectfully dissent from the majority's conclusion that plaintiffs have adequately alleged causes of action for breach of contract, misrepresentation-concealment, and promissory estoppel. I would therefore affirm the trial court's February 15, 2011 judgment dismissing the entire action with prejudice after plaintiffs elected not to further amend their first amended complaint.

In this case, plaintiffs Irma Moncada, Randy Morris, and Everardo Serrano (hereafter, plaintiffs) brought a lawsuit against their former employer, defendant West Coast Quartz Corporation (West Coast) and defendants Paul Maloney, president and chief financial officer, and Nancy Tkalcevic, chief executive officer. Plaintiffs allege that defendants broke their promise to pay plaintiffs a retention bonus of enough money to retire and not work again if they continued to work for West Coast until the company was sold.

Plaintiffs were given the opportunity to amend their first amended complaint but were unable to allege that defendants' promise included terms that were more definite than a vague and uncertain promise to give plaintiffs a bonus in an amount sufficient to retire and not work again if plaintiffs continued to work at West Coast until the company was sold. Plaintiffs were also unable to allege that defendants had agreed that the amount of the bonus could be determined by a third person, such as a financial planner, or by a specific standard. (Civ. Code, § 1610[1]; see *Bewick v. Mecham* (1945) 26 Cal.2d 92, 98-99 (*Bewick*).) Further, plaintiffs declined the trial court's invitation to amend their first

_____

[1] All further statutory references are to the Civil Code unless otherwise indicated.

amended complaint to seek recovery under the doctrine of quantum meruit. (§ 1611; see *Hunter v. Ryan* (1930) 109 Cal.App. 736, 738.)

I would find that the alleged promise of a retention bonus in an amount sufficient for an employee to retire and not work again is unenforceable under the doctrine of unenforceability of indefinite promises articulated by the California Supreme Court in *Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454 (*Scott*), disapproved on another ground in *Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 352, fn. 17 (*Guz*).) " ' "[A]lthough the terms of a contract need not be stated in the minutest detail, it is requisite to enforceability that it must evidence a meeting of the minds upon the essential features of the agreement, and that the scope of the duty and limits of acceptable performance be at least sufficiently defined to provide a rational basis for the assessment of damages. . . ." ' [Citation.]" (*Scott*, *supra*, at p. 467.) As I will further explain, plaintiffs' allegations are not sufficiently definite for the amount of the alleged retirement bonus to be rationally assessed as contract damages.

Although I agree with my colleagues that defendants' alleged conduct of making a false promise to pay a retention bonus was "not exemplary" conduct by an employer (*Trerice v. Blue Cross of California* (1989) 209 Cal.App.3d 878, 884 (*Trerice*)), I believe that as an intermediate appellate court we are bound to follow and apply the California Supreme Court's prevailing precedent in *Scott*. I also believe, for the reasons stated below, that defendants' alleged promise is insufficiently definite to support the causes of action for misrepresentation-concealment and promissory estoppel.

However, I agree with the trial court that plaintiffs were not precluded from seeking leave to amend their first amended complaint to seek recovery under the doctrine of quantum meruit.

2

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. *The Original Complaint*

On April 13, 2010, plaintiffs filed their original complaint against defendants West Coast, Maloney, and Tkalcevic. They alleged that Maloney and Tkalcevic were also the two sole shareholders of West Coast. Plaintiffs were either long-term employees, managers, and/or key employees.

Plaintiffs further alleged that in June 2004, Maloney and Tkalcevic informed the managers and key employees, including plaintiffs, that they were intending to sell the company. Maloney and Tkalcevic also informed the managers and key employees that if they agreed to continue working while the sale was pending, they would be given an equity interest in the company. When several months passed and the requests of the managers and key employees for stock "went unheeded," some of them began to leave the company. Plaintiffs assert that "[a]t that time, the Defendants told Plaintiffs that if they agreed to stay and continue to work at the company they would be provided with a bonus when the company was sold in an amount sufficient for them to retire and not have to work any further. The Plaintiffs agreed to do so."

According to plaintiffs, "[t]hereafter, on numerous occasions the Defendants reiterated their promises to reward the Plaintiffs for continuing to work at Defendant, West Coast, and to forgo [*sic*] other employment by restating that when the company was sold the Plaintiffs would receive a bonus in an amount sufficient for them and Defendants, Maloney and Tkalcevic, to retire and to not have to work any longer." Based on these promises, plaintiffs did not seek other employment and continued to work diligently for West Coast. Defendants declined plaintiffs' request to put the promises in writing on the ground that to do so would have adverse tax consequences.

In November 2009, plaintiffs learned that West Coast had been sold to a larger worldwide company and that Maloney and Tkalcevic had transferred their shares to that

3

company. Plaintiffs also learned that other employees had received "substantial sums in fulfillment of the promises made." Although they had worked at the company until it was sold, plaintiffs did not receive the promised retirement bonus.

Based on these allegations, plaintiffs asserted causes of action for "misrepresentation-concealment," breach of contract, promissory estoppel, intentional infliction of emotional distress, estoppel in pais, and violation of Business and Professions Code section 17200.

**B.** *The September 7, 2010 Order*

Defendant West Coast demurred to the original complaint on the ground that the allegations failed to state facts sufficient for any of the causes of action included in the complaint and were also uncertain and unintelligible.

In its supporting points and authorities, West Coast argued that the action was time-barred; the cause of action for misrepresentation-concealment failed to allege a specific amount of damages; the allegation of a promise to pay an unspecified bonus in an amount sufficient to retire was too vague to create an enforceable contract; the cause of action for promissory estoppel also failed to alleged a clear promise; plaintiffs did not allege the outrageous conduct necessary for a cause of action for intentional infliction of emotional distress; estoppel in pais is a defensive doctrine, not a cognizable cause of action; and the cause of action for violation of Business and Professions Code section 17200 could not be sustained since all of the other causes of action were legally insufficient. Defendants Maloney and Tkalcevic made similar arguments in their points and authorities in support of their demurrers to the original complaint.

Analyzing the defendants' demurrers together, the trial court ruled in its order of September 7, 2010, that (1) the demurrer on statute of limitations grounds was overruled; (2) the demurrers to the cause of action for misrepresentation-concealment, breach of contract, and promissory estoppel were sustained with leave to amend because the

4

promises alleged were "not sufficiently definite enough to allow damages to be properly computed and assessed"; (3) the demurrer to the cause of action for intentional infliction of emotional distress was sustained with leave to amend because the allegations "do not support the element of extreme and outrageous conduct that is so outrageous as to be classified as intolerable in a civilized society"; (4) the demurrer to the cause of action for estoppel in pais was sustained without leave to amend because plaintiffs had not shown that estoppel in pais is a recognized cause of action in California; and (5) the cause of action under Business and Professions Code section 17200 was sustained with leave to amend since there was no likelihood that the alleged conduct would recur.

## C. *The First Amended Complaint*

Plaintiffs subsequently filed a first amended complaint (the amended complaint) on October 4, 2010. The amendments included more details about defendants' alleged promise to pay plaintiffs a bonus in an amount sufficient for retirement if they continued working for the company until it was sold. The amended complaint also added a cause of action for negligent misrepresentation and omitted two causes of action that had been asserted in the original complaint (estoppel in pais and violation of Bus. & Prof. Code, § 17200).

Regarding the alleged promise of a retirement bonus, the amended complaint included the additional allegations that on multiple, specific occasions, during the period of June 2004 to April 2009, defendants Maloney and Tkalcevic had reiterated their promise that if plaintiffs continued to work for West Coast they would receive enough money to retire when the company was sold. Defendants also told plaintiffs that they were working with "advisers to make sure that the bonuses would not be taxed."

Plaintiff Moncada was specifically told, among other things, that she would "be done with working and would be able to stay at home with her babies and retire once the company was sold." Plaintiff Serrano was asked "to stay at the company pending the sale

5

and that if he did so he would then be able to get the bonus and retire and be with his family along with the others." Defendant Tkalcevic told plaintiff Morris that the retirement bonus promise could not be put in writing due to " 'tax issues.' " Defendant Maloney told Morris, " '[r]emember you are going to get a bonus when the company is sold so you can retire.' "

Plaintiffs also alleged that they "understood" that they had to continue working at West Coast to receive the retirement bonus. Plaintiffs also "understood" that once the company was sold, defendants would determine the specific amount of plaintiffs' bonuses by "using information about the Plaintiffs' debts and obligations, their lifestyles at that time and actuarial information sufficient to allow financial planners to set a specific amount for each of them given their specific circumstances at that time." Based on defendants' promise of a retirement bonus, plaintiffs continued to work for West Coast and did not accept or seek other employment opportunities, did not move to other locations with better schools, and gave up opportunities to obtain retirement monies and better compensation from other companies.

In November 2009, plaintiffs learned that West Coast had been sold and that Maloney and Tkalcevic had transferred their shares to the acquiring company. When defendants refused to disclose the terms of the sale, plaintiffs learned from public sources that Maloney and Tkalcevic had received $30.21 million for their shares. Although other employees received nominal bonuses after the sale of the company, no monies were paid to plaintiffs.

**D.** *Demurrers to the Amended Complaint*

West Coast demurred to the amended complaint on the grounds that the action was time-barred and the amended complaint failed to state facts sufficient for any of the causes of action.

6

Regarding the causes of action for misrepresentation-concealment, promissory estoppel, and negligent misrepresentation, West Coast argued that the alleged promise of a retirement bonus remained fatally vague and uncertain. As to the cause of action for breach of contract, West Coast argued that the vague and uncertain promise of a retirement bonus could not, as a matter of law, form the basis for an enforceable contract since damages for breach of contract could not be calculated. Finally, West Coast asserted that plaintiffs did not allege conduct by defendants that could be reasonably regarded as extreme and outrageous and therefore the amended complaint failed to state facts sufficient for the cause of action for intentional infliction of emotional distress.

Maloney and Tkalcevic demurred to the amended complaint on the similar grounds that plaintiffs had failed to state facts sufficient for the misrepresentation-concealment, promissory estoppel, negligent misrepresentation, and breach of contract causes of action because the alleged promise of a retirement bonus was too vague and indefinite. Maloney and Tkalcevic further contended that plaintiffs had failed to state a cause of action for intentional infliction of emotional distress because the allegation of defendants' failure to pay promised compensation in an unspecified amount did not qualify as outrageous conduct.

Plaintiffs opposed the demurrers, arguing that the amended complaint stated sufficient facts for all causes of action. They maintained that an enforceable unilateral contract was created when they continued to work for West Coast in exchange for the promised retirement bonus, even if the bonus was unspecified. Plaintiffs also argued that the causes of action for misrepresentation-concealment, promissory estoppel, and negligent misrepresentation sufficiently alleged that defendants knowingly deceived plaintiffs by making a false promise of a retirement bonus.

Further, plaintiffs asserted that the cause of action for intentional infliction of emotional distress sufficiently alleged outrageous conduct, consisting of defendants'

"virtually enslave[ing] the Plaintiffs for 5 years by inducing the Plaintiffs to give up their freedom including their rights to go to a company which paid more, which had better benefits, which had a retirement plan and to forego moving to better locations where better schools existed or better housing. . . . The Defendants intentionally used the Plaintiffs as pawns to increase the saleability of West Coast to their benefit and to the Plaintiffs' detriment."

### E. *The February 9, 2011 Order*

The trial court ruled on all of the defendants' demurrers in its order of February 9, 2011.

As to the first cause of action for misrepresentation-concealment, the trial court sustained the demurrers with leave to amend on the ground that the amended complaint failed to state facts sufficient for that cause of action. The court stated, "At the hearing, plaintiffs' counsel responded to a question from the court stating plaintiffs were not pursuing any damages other than the loss of the promised retirement bonus. Based upon that concession, the court finds the alleged promise to be too vague to support a fraud claim. [Citation.]"

The trial court also sustained the demurrers to the second cause of action for breach of contract with leave to amend on the ground that the amended complaint did not state facts sufficient for that cause of action. The court stated that "[t]he promised retirement bonus is too indefinite to be enforced, but plaintiffs shall have leave to amend to seek quantum meruit."

The demurrers to the third cause of action for promissory estoppel and the fifth cause of action for negligent misrepresentation were similarly sustained with leave to amend on the ground that the amended complaint did not state facts sufficient for either cause of action because the alleged promise was "too vague to support a fraud claim."

8

Finally, the trial court sustained the demurrers to the fourth cause of action for intentional infliction of emotional distress without leave amend, finding that the amended complaint "does not allege extreme or outrageous conduct by defendant West Coast. . . ."

On February 15, 2011, the trial court entered a judgment dismissing the entire action with prejudice.[2] The judgment states that it was based upon the court's orders of September 7, 2010 and February 9, 2011. The judgment also states, "On February 11, 2011, plaintiffs advised defendants that they would not be further amending the complaint."

Plaintiffs subsequently filed a timely notice of appeal from the judgment of dismissal.

## II. DISCUSSION

On appeal, plaintiffs contend that the trial court erroneously ruled in its order of February 9, 2011, that the amended complaint failed to state facts sufficient for any of the five causes of action included in the amended complaint ("misrepresentation-concealment," breach of contract, promissory estoppel, intentional infliction of emotional distress, and negligent misrepresentation). They also argue that the trial court erred in its prior order of September 7, 2010, when the court ruled that a cause of action for estoppel in pais is not recognized in California and sustained the demurrer to that cause of action without leave to amend.

---

[2] Code of Civil Procedure section 581, subdivision (f)(2) provides, "The court may dismiss the complaint as to that defendant, when . . . [¶] . . . [¶] . . . after a demurrer to the complaint is sustained with leave to amend, the plaintiff fails to amend it within the time allowed by the court and either party moves for dismissal."

9

As a threshold matter l believe this court should first consider defendants' claim that plaintiffs have waived the issues they seek to raise on appeal, which was not expressly addressed in the majority opinion.

## A. *Waiver*

Defendants argue that plaintiffs have waived their appellate challenge to the trial court's ruling that the alleged promise of a retirement bonus was too vague to enforce or to support a fraud claim, and therefore the judgment should be affirmed as to the causes of action for misrepresentation, breach of contract, and promissory estoppel.

According to defendants, since plaintiffs did not seek appellate review of the trial court's ruling in the September 7, 2010 order that the allegations in the original complaint regarding the promise of a retirement bonus were too vague to either create an enforceable contract or to support the causes of action for misrepresentation and promissory estoppel, and then filed an amended complaint with no substantive changes to the allegations, they have waived any appellate challenge to that ruling.

Additionally, Maloney and Tkalcevic argue that plaintiffs have waived their appellate challenge to the trial court's ruling sustaining the demurrer to the cause of action for intentional infliction of emotional distress because they filed an amended complaint. Maloney and Tkalcevic assert that the amended complaint "simply add[ed] detail" to the "original defective allegations." For that reason, Maloney and Tkalcevic maintain that plaintiffs have conceded the correctness of the trial court's September 7, 2010 ruling that the allegations pertaining to the promise of a retirement bonus were insufficient for a cause of action for intentional infliction of emotional distress.

This court has previously stated the relevant rules: " 'Upon an appeal pursuant to [Code of Civil Procedure s]ection 904.1 or 904.2, the reviewing court may review the verdict or decision and *any intermediate ruling,* proceeding, order or decision *which involves the merits or necessarily affects the judgment* or order appealed from or which

10

substantially affects the rights of a party' if the intermediate order was not appealable. (Code Civ. Proc., § 906, italics added.)  When a demurrer is sustained with leave to amend, and the plaintiff chooses not to amend but to stand on the complaint, an appeal from the ensuing dismissal order may challenge the validity of the intermediate ruling sustaining the demurrer. [Citation.]  On the other hand, where the plaintiff chooses to amend, any error in the sustaining of the demurrer is ordinarily waived.  [Citations.]" (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 312 (*County of Santa Clara*).)

In the present case, the trial court's order of September 7, 2010  sustained the demurrers to all causes of action in the original complaint with leave to amend, except the cause of action for estoppel in pais to which the demurrer was sustained without leave to amend.  The amended complaint contained expanded versions of the causes of action for misrepresentation-concealment, breach of contract, promissory estoppel, and intentional infliction of emotional distress, and added a new cause of action for negligent misrepresentation.  The trial court's subsequent order of February 9, 2011 sustained the demurrers to all causes of action with leave to amend, except the cause of action for intentional infliction of emotional distress to which the demurrer was sustained without leave to amend.

Pursuant to Code of Civil Procedure section 906, I determine that the portion of the September 7, 2010 order sustaining the demurrer to the cause of action for estoppel in pais in the original complaint without leave to amend may be reviewed on appeal from the judgment of dismissal as an "intermediate ruling . . . which involves the merits or necessarily affects the judgment or order appealed from . . . ."  (Code Civ. Proc., § 906.) To the extent plaintiffs challenge other portions of the September 7, 2010 order, they have waived that appellate challenge since they filed an amended complaint.  (*County of Santa Clara*, *supra*, 137 Cal.App.4th at p. 312.)

11

The merits of plaintiffs' challenge to the February 9, 2011 order  sustaining the demurrers to all causes of action in the amended complaint may also be considered on appeal, since that order also constitutes an intermediate ruling that necessarily affects the judgment.  (Code Civ. Proc., § 906.)  Whether the amendments to the causes of action state sufficient facts to survive defendants' demurrers to the amended complaint is the overall issue to be addressed on appeal.

For these reasons, I would determine that plaintiffs have not waived the issue of whether the trial court erred in ruling in its order of February 9, 2011  that plaintiffs failed to state facts sufficient for any of the causes of action included in the amended complaint. Plaintiffs also have not waived the issue of whether the trial court erred in ruling in its prior order of September 7, 2010, that a cause of action for estoppel in pais is not recognized in California and sustaining the demurrer to that cause of action in the original complaint without leave to amend.

Before turning to plaintiffs' contentions on appeal, I will outline the applicable standard of review.

## B.  *Standard of Review*

The reviewing court assumes the truth of all facts properly pleaded by the plaintiff on appeal from a judgment of dismissal after a demurrer is sustained.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 (*Evans*).)  "We also accept as true all facts that may be implied or reasonably inferred from those expressly alleged.  [Citation.]"  (*Rotolo v. San Jose Sports & Entertainment, LLC* (2007) 151 Cal.App.4th 307, 320-321.)  Further, "we give the complaint a reasonable interpretation, and read it in context.  [Citation.]" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)  But we do not assume the truth of " ' "contentions, deductions or conclusions of fact or law." ' " (*Evans*, *supra,* at p. 6.)

12

The court also considers matters that may be judicially noticed. (Code Civ. Proc., § 430.30, subd. (a); *Schifando, supra,* 31 Cal.4th at p. 1081.) Additionally, we consider the complaint's exhibits. (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400 (*Hoffman*).) After reviewing the allegations of the complaint, the complaint's exhibits, and the matters properly subject to judicial notice, we exercise our independent judgment as to whether the complaint states a cause of action as a matter of law. (See *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)

Where, as here, the " 'plaintiff is given the opportunity to amend his [or her] complaint and elects not to do so, strict construction of the complaint is required and it must be presumed that the plaintiff has stated as strong a case as he [or she] can.' [Citations.]" (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091 (*Reynolds*), abrogated on other grounds in *Martinez v. Combs* (2010) 49 Cal.4th 35, 66; accord, *Hoffman, supra,* 179 Cal.App.4th at p. 408.)

However, "[t]he issue of leave to amend is always open on appeal, even if not raised by the plaintiff. [Citation.]" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746.) "[L]eave to amend is properly granted where resolution of the legal issues does not foreclose the possibility that the plaintiff may supply necessary factual allegations." (*Id.* at p. 747.) "The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Schifando, supra,* 31 Cal.4th at p. 1081.)

## C. *Breach of Contract*

### 1. The Parties' Contentions

Plaintiffs' first contention on appeal is that the trial court erred, in its order of February 9, 2011, when the court sustained the demurrer to the cause of action for breach of contract in the amended complaint. They assert that the allegations in the amended complaint are sufficient to show that they entered into an enforceable unilateral contract by continuing their employment for West Coast in exchange for the promise of a bonus in

13

an amount sufficient for them to retire when the company was sold.  Relying on the decision in *Sabatini v. Hensley* (1958) 161 Cal.App.2d 172 (*Sabatini*), plaintiffs argue that their allegation of an unspecified retirement bonus did not render the agreement too indefinite for enforcement.  They explain that the allegations in the amended complaint set forth the manner in which the retirement bonuses would be calculated "by financial planners using specific and definite information."

Defendants reject plaintiffs' argument regarding an enforceable unilateral contact.  Relying on *Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761 (*Ladas*), they contend that the alleged promise of an unspecified retirement bonus, which plaintiffs understood was to be calculated on the basis of each individual plaintiff's "personal lifestyle, debts and obligations" on the date West Coast was sold, is too vague and indefinite to constitute an enforceable bonus agreement.  Defendants point out that plaintiffs do not allege that any of the claimed factors for calculating the alleged retirement were ever discussed or agreed upon by the parties and contend there was no meeting of the minds with regard to the retirement bonus.

Defendants further contend that since the promise of a retirement bonus in an amount sufficient for each plaintiff to retire would have to be adjusted to accommodate future changes in their lifestyles, debts, and obligations, there is no rational basis for determining whether the contract has been breached and computing damages, and, therefore, the alleged contract is unenforceable.

### 2.  Applicable Law

It has long been the general rule in California that "[w]here a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable.  [Citations.]  . . .  Unless the court has ascertainable provisions of agreement before it, there is no contract on which the court may act.  However, 'The law does not favor but leans against the destruction of contracts

14

because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained.'  [Citations.]" (*Cal. Lettuce Growers v. Union Sugar Co.* (1955) 45 Cal.2d 474, 481; see *Coleman Engineering Co. v. North American Aviation, Inc.* (1966) 65 Cal.2d 396, 417.)  It is a question of law whether a contract term is sufficiently definite to be enforceable.  (*Ladas*, *supra*, 19 Cal.App.4th at p. 770, fn. 2.)

In *Ladas*, three insurance sales representatives claimed that their employer, the California State Automobile Association, had breached their employment contract by failing to pay them in parity with other similarly situated insurance sales representatives in the insurance industry.  (*Ladas*, *supra*, 19 Cal.App.4th at p. 767.)  The appellate court stated the rule that "[t]o be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.  [Citations.]"  (*Id.* at p. 770.)  Applying this rule, the appellate court agreed with the trial court's ruling that "[a]n amorphous promise to 'consider' what employees at other companies are earning cannot rise to the level of a contractual duty.  . . .  The nature of the obligation asserted provides no rational method for determining breach or computing damages."  (*Id.* at p. 771.)

The *Ladas* court also found that policy reasons supported its determination that the plaintiff insurance sales representatives had not entered into an enforceable contract. "Employers frequently boast of good benefits, competitive salaries, excellent working conditions and the like.  To anoint such puffing language with contractual import would open the door to a plethora of specious litigation and constitute a severe and unwarranted intrusion on the ability of business enterprises to manage internal affairs."  (*Ladas*, *supra*, 19 Cal.App.4th at p. 772.)

15

Similarly, in *Rochlis v. Walt Disney Co.* (1993) 19 Cal.App.4th 201, 213-214 (*Rochlis*) disapproved on another ground in *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1251, the appellate court rejected a former employee's claim that The Walt Disney Company had made enforceable promises to pay the employee " 'appropriate' " salary increases or bonuses and to give him "an 'active and meaningful' participation in creative decisions." The court concluded that "these promises . . . will not support a breach of contract claim in any event. They are not sufficiently certain to be enforced and would improperly impose on the court the burden of making financial and management decisions better left to the parties." (*Id*. at p. 214.)

The decisions in *Rochlis* and *Ladas* were subsequently cited with approval by the California Supreme Court. "The *Ladas* court . . . applied the well-established principle that ' "[a]lthough the terms of a contract need not be stated in the minutest detail, it is requisite to enforceability that it must evidence a meeting of the minds upon the essential features of the agreement, and that the scope of the duty and limits of acceptable performance be at least sufficiently defined to provide a rational basis for the assessment of damages. . . ." ' [Citation.]" (*Scott*, *supra*, 11 Cal.4th at p. 467.)

The California Supreme Court in *Scott* further stated that "as suggested above in the discussion of *Ladas* . . . the doctrine of unenforceability of indefinite promises will likely eliminate many employment contract claims that would involve courts in the micromanagement of the workplace. The utility of this doctrine is further illustrated by [*Rochlis*]. . . . In other words, courts will not enforce vague promises about the terms and conditions of employment that provide no definable standards for constraining an employer's inherent authority to manage its enterprise. It is to be expected that many alleged employer promises will be unable to cross this threshold of definition to become enforceable contract claims." (*Scott*, *supra*, 11 Cal.4th at pp. 472-473.)

16

The *Scott* court concluded, however, that the doctrine of unenforceability of indefinite promises did not bar an employee's claim that Pacific Gas & Electric Company had breached an implied contract not to demote its employees without good cause. The company's written "discipline policies not only provided an implied good cause standard for demotion, but also a detailed set of rules and procedures for governing the imposition of discipline that further defined the meaning of that standard. These rules and procedures were sufficiently clear to permit a trier of fact to determine whether the company had complied with them." (*Scott*, *supra*, 11 Cal.4th at p. 467.)

This court has applied the doctrine of unenforceability of indefinite promises as set forth in *Ladas* and *Rochlis*. In *Bustamante v. Intuit, Inc*. (2006) 141 Cal.App.4th 199, 201 (*Bustamante*), the plaintiff claimed that the defendant software company had breached a contract to establish a joint venture to market software adapted for use in Mexico. This court concluded that "the undisputed facts here show no meeting of the minds as to the essential structure and operation of the alleged joint venture, even if there was agreement on some of the terms. '[T]he failure to reach a meeting of the minds on all material points prevents the formation of a contract *even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract*.' [Citation.]" (*Id*. at p. 215.)

In *Barton v. Elexsys Internat., Inc.* (1998) 62 Cal.App.4th 1182, 1189-1190 (*Barton*), this court rejected the claim of a senior vice president that his company's chief executive officer (CEO) had made an enforceable oral promise that modified the senior vice president's compensation agreement to allow him the right to exercise certain stock options after his employment was terminated. The evidence showed that the CEO had only represented in general terms "that the key executives 'had to be taken care of.' [The plaintiff] did not ask [the CEO] what he meant by the phrase 'taken care of,' and he did not express his own subjective interpretation of these words (that key executives' stock

17

options would continue to vest and be exercisable throughout the period of salary protection)." (*Id.* at p. 1190.) Citing *Rochlis*, this court ruled that the CEO's promise to take care of the key executives was "too vague and uncertain to support a claim that the parties' written stock option agreements had been modified thereby. [Citation.]" (*Ibid.*)

Having determined the applicable law, I next consider the merits of plaintiffs' contentions regarding defendants' alleged retirement bonus promise.

### 3. Analysis

To determine whether defendants' retirement bonus promise constitutes an enforceable contract, I believe we must apply the doctrine of the unenforceability of indefinite promises as instructed by the California Supreme Court in *Scott*: " ' "[A]lthough the terms of a contract need not be stated in the minutest detail, it is requisite to enforceability that it must evidence a meeting of the minds upon the essential features of the agreement, and that the scope of the duty and limits of acceptable performance be at least sufficiently defined to provide a rational basis for the assessment of damages. . . ." ' [Citation.]" (*Scott*, *supra*, 11 Cal.4th at p. 467.)

Plaintiffs' allegations in the amended complaint regarding the promise of a retirement bonus are essentially (1) defendants promised plaintiffs that if they continued to work for West Coast until the company was sold, they would receive a monetary bonus in an amount sufficient for them to retire and not have to work again; (2) plaintiffs "understood" that once the company was sold, defendants would determine the specific amount of plaintiffs' retirement bonuses "by using information about the Plaintiffs' debts and obligations, their lifestyles at that time and actuarial information sufficient to allow financial planners to set a specific amount for each of them given their specific circumstances at that time." Following the direction of our Supreme Court, I construe these allegations strictly and presume that plaintiffs have stated as strong a case as they

18

can regarding defendants' obligation to pay them a retirement bonus. (*Reynolds*, *supra*, 36 Cal.4th at p. 1091.)

These allegations fail to show that the parties had a meeting of the minds on the essential features of the retirement bonus agreement. Plaintiffs do not allege that defendants agreed to a specific amount for any of the promised retirement bonuses nor do they allege that defendants agreed to, or even mentioned, a method for calculating the retirement bonuses. Plaintiffs merely allege their own one-sided "understanding" that financial planners would be employed to calculate their bonuses by using information supplied by plaintiffs about their debts, obligations, and lifestyles, as well as unspecified actuarial information. This allegation is insufficient because "[u]nder California law, the subjective, unexpressed beliefs of the parties do not serve as the basis for whether or not a contract is formed. Instead, the mutual assent necessary to form a contract is determined under an objective standard applied to the outward manifestations or expressions of the parties. [Citation.]" (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 150, disapproved on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 524.)

Absent allegations showing a meeting of the minds as to either the amount of the promised retirement bonuses or a method for calculating the bonuses, the scope of defendants' duty to pay a retirement bonus and the limits of an acceptable performance have not been sufficiently defined to provide a rational basis for the assessment of damages. (*Scott*, *supra*, 11 Cal.4th at p. 467.) The amount required for any of the plaintiffs to retire and not have to work again is obviously uncertain since the amount could vary tremendously without any agreed-upon method or standard by which the

19

amount of the retirement bonus could be determined.  (§ 1610[3]; see *Bewick*, *supra*, 26 Cal.2d at pp. 98-99 [option covenant providing for the appointment of third persons to ascertain the price was definite enough to give rise to a contract]; see also *Larwin-Southern California, Inc. v. JGB Investment Co.* (1979) 101 Cal.App.3d 626, 643 [California law recognizes that when a contract provides such an objective method for ascertaining the purchase price, the contract should not be construed as too indefinite to be enforced].)

Consequently, even though plaintiffs allegedly continued to work for West Coast in reliance upon the promise of a retirement bonus, under the doctrine of the unenforceability of indefinite promises the alleged retirement bonus promise is too indefinite to support an enforceable contract.  (See *Bustamante*, *supra*, 141 Cal.App.4th at p. 215; *Barton*, *supra*, 62 Cal.App.4th at p. 1190.)

Plaintiffs' argument that they entered into an enforceable unilateral contract is not convincing.  In *Scott*, our Supreme Court noted that with regard to unilateral employment contracts, " '[o]f late years the attitude of the courts (as well as of employers in general) is to consider [the employer's practices and policies] which offer additional advantages to employees as being in effect offers of a unilateral contract which offer is accepted if the employee continues in the employment, and not as being mere offers of gifts.' [Citations.]"  (*Scott*, *supra*, 11 Cal.4th at p. 464; see also *Guz, supra,* 24 Cal.4th at p. 344; *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 10-11 (*Asmus*).)

Decisions applying the unilateral contract rule stated in *Scott*, *Guz*, and *Asmus* include, among others, *Neisendorf v. Levi Strauss & Co.* (2006) 143 Cal.App.4th 509,

---

[3] Section 1610 provides, "When a consideration is executory, it is not indispensable that the contract should specify its amount or the means of ascertaining it. It may be left to the decision of a third person, or regulated by any specified standard."

522-523 (*Neisendorf*) [specific bonus plan enforceable when employee begins service]; *Newberger v. Rifkind* (1972) 28 Cal.App.3d 1070, 1073-1075 (*Newberger*) [written stock options agreement enforceable where employees continued to work in exchange for options grant]; and *Chinn v. China Nat. Aviation Corp.* (1955) 138 Cal.App.2d 98, 103 (*Chinn*) [employer's definite plan of employee benefits constituted enforceable contract where employee continued in employment]. However, the decisions in *Neisendorf*, *Newberger*, and *Chinn* are distinguishable from the case at bar. In each case, the promise the employer made to the employee in exchange for the employee continuing to work was a promise of a specified benefit that, unlike the retirement bonus promise in the present case, was not vague or indefinite.

Plaintiffs rely on the decisions in *Sabatini*, *Hunter v. Ryan*, and *Hunter v. Sparling* (1948) 87 Cal.App.2d 711. In *Hunter v. Sparling*, the promise of the employer, a Japanese bank, to pay the plaintiff employee "a 'substantial,' or 'large' sum of money" upon his retirement was deemed an enforceable contract because even though the plaintiff did not know the formula for calculating the amount, that formula was ascertainable from the Japanese language rules and regulations available at the home office in Japan. (*Hunter v. Sparling*, *supra*, at pp. 718, 724-725.) The promise was therefore not too uncertain in its terms to be enforceable. (*Id.* at pp. 724-725.) In contrast, plaintiffs in the present case have not alleged that their retirement bonus could be calculated under a formula that could be ascertained from the company's rules and regulations.

The decisions in *Hunter v. Ryan* and *Sabatini* are distinguishable because both decisions apply the doctrine of quantum meruit, which allows a party who has provided services for the benefit of another to recover the reasonable value of the services from the

21

person who benefited from the services. (§ 1611[4]; see *Palmer v. Gregg* (1967) 65 Cal.2d 657, 660; see also *Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 249.)

In *Hunter v. Ryan* the appellate court upheld a a finding the plaintiff was owed a bonus of $2,000 as the reasonable value of services performed outside the services she performed for her weekly wages of $50, although the employer's promise did not specify the amount of the bonus. (*Hunter v. Ryan*, *supra*, 109 Cal.App. at pp. 738-379.) The decision in *Sabatini* similarly concerned an employer's promise to pay an employee a fixed salary and a bonus in an unspecified amount. (*Sabatini*, *supra*, 161 Cal.App.2d at p. 175.) The appellate court stated: "If the agreement does not specify the amount to be paid, the law will imply an agreement to pay the reasonable value of the services and will permit recovery of the excess of such amount over the salary paid." (*Id*. at p. 176.)

In this case, however, the first amended complaint may not be construed to seek recovery under the doctrine of quantum meruit because the record reflects that plaintiffs declined the trial court's invitation to amend the complaint to include quantum meruit allegations. In its order of February 9, 2011, the trial court stated: "The promised retirement bonus is too indefinite to be enforced, but plaintiffs shall have leave to amend to seek quantum meruit." The trial court subsequently stated in the judgment that "[o]n February 11, 2011, plaintiffs advised defendants that they would not be further amending the complaint."

For these reasons, I would find that the trial court in its order of February 9, 2011, properly sustained the demurrer to the cause of action for breach of contract in the

---

[4] Section 1611 provides, "When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained, or when it leaves the amount thereof to the discretion of an interested party, the consideration must be so much money as the object of the contract is reasonably worth."

22

amended complaint. However, I agree with the trial court that plaintiffs were not precluded from seeking leave to amend their first amended complaint to seek recovery under the doctrine of quantum meruit.

### D. *Misrepresentation-Concealment*

#### 1. The Parties' Contentions

Plaintiffs argue that the amended complaint states facts sufficient for the cause of action for misrepresentation-concealment because they alleged that defendants "concealed from them that Defendants induced Plaintiffs to remain employed at West Coast in order to make the company more attractive to potential buyers while concealing from the Plaintiffs that they only intended to give Plaintiffs nominal bonuses if any at all."

Defendants respond that the vague and uncertain allegations regarding the promise of a retirement bonus are fatal to the cause of action for misrepresentation-concealment, relying on the statement in *Rochlis*, *supra*, 19 Cal.App.4th at page 216 that "[p]romises too vague to be enforced will not support a fraud claim any more than they will one in contract."

#### 2. Applicable Law

This court has stated that "[c]oncealment is a species of fraud or deceit. (See . . . §§ 1710, subd. (3),[5] 1572, subd. (3), [citation].)" (*Blickman Turkus, LP v. MF*

---

[5] Section 1710 provides, "A deceit, within the meaning of the last section, is either: [¶] 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; [¶] 2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; [¶] 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely

23

*Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 868; see also *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.* (1992) 6 Cal.App.4th 603, 613.)  I understand plaintiffs to be attempting to state a cause of action for a particular type of fraud known as promissory fraud.

The California Supreme Court has instructed that " '[p]romissory fraud' is a subspecies of the action for fraud and deceit.  A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.  [Citations.]" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 (*Lazar*); see also *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158-159 (*Tarmann*) [broken promise of future action may be actionable].)

In evaluating the sufficiency of promissory fraud allegations, the court applies the following rule:  "In California, fraud must be pled specifically; general and conclusory allegations do not suffice.  [Citations.]  'Thus " 'the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.' "  [Citation.]  [¶]  This particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered." '  [Citation.]" (*Lazar*, *supra*, 12 Cal.4th at p. 645; see also *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184.)

"The specificity requirement serves two purposes.  The first is notice to the defendant, to 'furnish the defendant with certain definite charges which can be intelligently met.'  [Citations.]  The pleading of fraud, however, is also the last remaining habitat of the common law notion that a complaint should be sufficiently specific that the

---

to mislead for want of communication of that fact; or, [¶] 4. A promise, made without any intention of performing it."

24

court can weed out nonmeritorious actions on the basis of the pleadings.  Thus the pleading should be sufficient ' "to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud." ' [Citations.]"  (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216-217.)

The requirement of specific pleading applies to the damages element of a fraud cause of action, as this court has previously stated:  "In order to recover for fraud, as in any other tort, the plaintiff must plead and prove the 'detriment proximately caused' by the defendant's tortious conduct.  (. . . § 3333.)  Deception without resulting loss is not actionable fraud.  [Citation.]  'Whatever form it takes, the injury or damage must not only be distinctly alleged but its causal connection with the reliance on the representations must be shown.'  [Citation.]"  (*Service by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807, 1818 (*Service by Medallion*).)

### 3.  Analysis

In the amended complaint at issue here, the damages allegations included in the cause of action for misrepresentation-concealment are as follows.  "As a direct and proximate result of the concealment, failure to inform and representations of Defendants, Plaintiffs have:  [¶]  A. Been damaged in an amount equal to the monies which would have allowed them to retire and stop working when West Coast was sold; [¶] B. Sustained damages in the form of missed opportunities for other employment and residence opportunities; [¶] C. Sustained damages in the form of uncompensated time for work and travel over and above normal in continuing to advance the profitability of West Coast and take over the duties and responsibilities of managers and key employees who had left West Coast; [¶] D. Sustained damages in the form of emotional distress and mental anguish.  [¶]  The exact amount of the aforesaid damages is not yet fully

25

ascertained but is within the jurisdictional limits of this Court and will be established according to proof at time of trial."

Defendants contend that these damage allegations are insufficient, relying on the statement in *Nagy v. Nagy* (1989) 210 Cal.App.3d 1262, 1268-1269 that "[a]n allegation of a definite amount of damage is essential to stating a cause of action. [Citation.]" I note that another appellate court has disagreed, stating that "the specific dollar amount is necessary only when a default judgment is to be entered." (*Furia v. Helm* (2003) 111 Cal.App.4th 945, 957.) However, it is not necessary to resolve the issue of whether a specific dollar amount of damages must be alleged in a fraud action, since it may be determined on other grounds that the damages allegations in the amended complaint are inadequate. (See *Lazar*, *supra*, 12 Cal.4th at p. 645.)

First, as I have discussed, the allegations regarding the promised retirement bonuses are too indefinite in the absence of a meeting of the minds as to either the amount of the bonuses or the method of calculating the amount of the bonuses. Second, the three plaintiffs fail to allege with any specificity the damages that each of them allegedly suffered due to relying on defendants' retirement bonus promise. Plaintiffs allege only in general terms that they all missed "other employment and residence opportunities," suffered "uncompensated time for work and travel" and "[s]ustained damages in the form of emotional distress and mental anguish." These conclusory allegations do not satisfy the general requirement that a cause of action for fraud must be pleaded specifically (*Lazar*, *supra*, 12 Cal.4th at p. 645) and the specific requirement that damages be distinctly alleged. (*Service by Medallion*, *supra,* 44 Cal.App.4th at p. 1818.)

I would therefore find that the trial court did not err in sustaining the demurrer to the cause of action for misrepresentation-concealment in its order of February 9, 2011.

26

### E. *Promissory Estoppel*

#### 1. The Parties' Contentions

Plaintiffs contend that the allegations of the amended complaint were sufficient for a promissory estoppel cause of action because they properly alleged the elements of a clear promise, reliance, substantial detriment, and damages.

According to defendants, the allegations are insufficient because the alleged promise of an unspecified retirement bonus does not constitute the clear and unambiguous promise that is necessary for a promissory estoppel cause of action.

#### 2. Applicable Law

The California Supreme Court has stated, "Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.' [Citation.]" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310 (*Kajima/Ray*).) The doctrine therefore serves as a substitute for consideration. (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 250.)

Under the doctrine of promissory estoppel, " '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.' [Citations.]" (*Kajima/Ray*, *supra*, 23 Cal.4th at p. 310.)

"The party claiming [promissory] estoppel must specifically plead all facts relied on to establish its elements. [Citations.]" (*Smith v. City and County of San Francisco* (1990) 225 Cal.App.3d 38, 48.) Thus, it is well established that the alleged promise must be " 'clear and unambiguous,' " or the promise is not binding. (*Cotta v. City and County of San Francisco* (2007) 157 Cal.App.4th 1550, 1566; see *US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 905; *Lange v. TIG Ins. Co.* (1998) 68

27

Cal.App.4th 1179, 1185; *Laks v. Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal.App.3d 885, 890 [promise must be clear and unambiguous in its terms].)

### 3. Analysis

In the present case, the alleged promise of bonuses in an amount sufficient for plaintiffs to retire and not work again is not a clear and unambiguous promise. As I have discussed, the retirement bonus promise is indefinite as to either the amount of the bonus or the method of calculating the bonus. The amended complaint therefore does not sufficiently allege the clear promise element of a cause of action for promissory estoppel.

Accordingly, I would find that in its order of February 9, 2011, the trial court properly sustained defendants' demurrers to the cause of action for promissory estoppel.

### F. *Negligent Misrepresentation*

#### 1. The Parties' Contentions

Plaintiffs contend that the trial court erred in sustaining the demurrers to the cause of action for negligent misrepresentation in the amended complaint on the ground that the alleged promise of a retirement bonus is "too vague to support a fraud claim."

According to defendants, the trial court did not err because a cause of action for negligent misrepresentation cannot be based upon "a promise that was too vague to be enforceable."

#### 2. Applicable Law

A cause of action for negligent misrepresentation is similar to a cause of action for fraud, with one key difference. "The elements of fraud are (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages. [Citation.] The elements of negligent misrepresentation are the same except for the second element, which for

28

negligent misrepresentation is the defendant made the representation without reasonable ground for believing it to be true. [Citations.]" (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792.)

This court has explained that "an action based on a false promise is simply a type of *intentional* misrepresentation, i.e., actual fraud. The specific intent requirement [for fraud] also precludes pleading a false promise claim as a negligent misrepresentation, i.e., 'The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.' (. . . § 1710, subd. (2).) Simply put, making a promise with an honest but unreasonable intent to perform is wholly different from making one with no intent to perform and, therefore, does not constitute a false promise. Moreover, we decline to establish a new type of actionable deceit: the negligent false promise." (*Tarmann*, *supra*, 2 Cal.App.4th at p. 159, fn. omitted.)

### 3. Analysis

In the present case, plaintiffs allege in their cause of action for negligent misrepresentation that "Defendants were aware that the promises and representations made to Plaintiffs were not accurate in light of information they had in hand at that time as alleged hereinabove. Defendants also undertook to conceal from Plaintiffs their lack of information and failure to make the promises and representations accurately. [¶] . . . The promises and representations by Defendants as aforesaid were made with the intent to induce Plaintiffs to act as set forth hereinabove."

Plaintiffs' allegations show that their cause of action for negligent misrepresentation does not actually plead that claim, since they do not allege that defendants made a promise with an honest but unreasonable intent to perform. (See *Tarmann*, *supra*, 2 Cal.App.4th at p. 159.) Instead, plaintiffs allege that defendants had no intention of performing by providing the promised retirement bonus. They have therefore attempted to state a cause of action for an intentional tort, since "an action

29

based on a false promise is simply a type of *intentional* misrepresentation, i.e., actual fraud." (*Ibid.*)

I therefore concur with the majority's determination that the trial court properly sustained the demurrer to the cause of action for negligent misrepresentation in its order of February 9, 2011.

### G. *Intentional Infliction of Emotional Distress*

#### 1. The Parties' Contentions

Plaintiffs argue that the trial court incorrectly sustained the demurrers to the cause of action for intentional infliction of emotional distress in the amended complaint. According to plaintiffs, they sufficiently alleged that defendants' conduct was outrageous by claiming that defendants "virtually enslaved the Plaintiffs for 5 years by inducing the Plaintiffs to give up their freedom, including their rights to go to a company which paid more, which had better benefits, which had a retirement plan and to forego moving to better locations where better schools existed or better housing." Plaintiffs also claim that defendants "took away [their] right to work where they wanted . . . ."

Defendants maintain that plaintiffs fail to state facts sufficient for a cause of action for intentional infliction of emotional distress because they do not allege extreme and outrageous conduct by defendants. In defendants' view, plaintiffs "allege nothing more than [defendants'] failure to pay allegedly promised compensation in an uncertain amount."

#### 2. Applicable Law

The California Supreme Court has established the elements of a cause of action for intentional infliction of emotional distress: " ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the

30

defendant's outrageous conduct. . . . " Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.' [Citation.]" (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903 (*Christensen*).)

Our Supreme Court clarified in *Christensen* that " ' "the rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is *especially calculated to cause*, and does cause, mental distress of a very serious kind." [Citations.]' " (*Christensen*, *supra*, 54 Cal.3d at pp. 904-905.) The court may determine in the first instance whether the defendant's conduct may be reasonably regarded as so extreme and outrageous as to permit recovery for intentional infliction of emotional distress. (*Fowler v. Varian Associates, Inc.* (1987) 196 Cal.App.3d 34, 44.)

In the employment context, our Supreme Court determined in *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, that the plaintiff employee had stated facts sufficient for a cause of action for intentional infliction of emotional distress by alleging that the defendant employer had "intentionally humiliated plaintiff, insulted his race, ignored his union status, and terminated his employment, all without just cause or provocation." (*Id*. at pp. 498-499, fn. omitted.)

In contrast, the allegations were insufficient for a cause of action for intentional infliction of emotional distress where the plaintiff employee claimed that the defendant employer first offered her a termination package, withdrew the offer the next day and told her she was still employed, and subsequently offered a less advantageous termination package while forcing her to do work she regarded as menial during her last 30 days of employment. (*Trerice*, *supra*, 209 Cal.App.3d at p. 884.) The appellate court stated, "While [defendants'] conduct is not exemplary, it certainly does not qualify as the kind of 'outrageous' conduct necessary in order to support an action for intentional infliction of emotional distress. [Citation.]" (*Ibid*.)

31

### 3. Analysis

The result in the present case is similar to the result in *Trecice*. Defendants' alleged conduct of making a false promise to pay a retirement bonus does not qualify as exemplary conduct by an employer. But such conduct does not reach the level of extreme and outrageous conduct that is necessary for a cause of action for intentional infliction of emotional distress. "[I]t is 'not . . . enough that the defendant has acted with an intent which is tortious or even criminal, or that he [or she] has intended to inflict emotional distress, or even that his [or her] conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' [Citation.]" (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 496 (*Cochran*).)

Here, plaintiffs essentially allege that they continued their employment in reliance upon the vague promise of an unspecified retirement bonus, which the defendant employer did not fulfill. As a matter of law, these allegations do not show that defendants' conduct was so extreme and outrageous as to exceed "all bounds usually tolerated by decent society . . . ." (*Christensen*, *supra*, 54 Cal.3d at p. 905; *Cochran*, *supra*, 65 Cal.App.4th at p. 496.) The allegations in the amended complaint are therefore insufficient to state a cause of action for intentional infliction of emotional distress.

For these reasons, I concur with the majority's determination that the trial court did not err, in its order of order of February 9, 2011, in sustaining the demurrers to the cause of action for intentional infliction of emotional distress.

32

## H. *Estoppel in Pais*

### 1. The Parties' Contentions

Finally, plaintiffs challenge that portion of the trial court's order of September 7, 2010, sustaining the demurrer to the cause of action for estoppel in pais without leave to amend because plaintiffs had not shown that estoppel in pais is a recognized cause of action in California.

Relying on the decision in *Hill v. Kaiser Aetna* (1982) 130 Cal.App.3d 188 (*Hill*), plaintiffs contend that the trial court erred because estoppel in pais is a legal theory on which a plaintiff employee's entitlement to a bonus may be based.

Defendant West Coast disputes this contention, arguing that estoppel in pais is a defensive doctrine, not an independent cause of action. Defendants Maloney and Tkalcevic add the argument that estoppel in pais is an evidentiary doctrine codified at Evidence Code section 623.[6]

### 2. Applicable Law

My resolution of the issue is guided by well established rules. "Equitable estoppel, originally known as estoppel in pais, and also called estoppel by conduct, is simply stated. 'Whenever a party has, by his [or her] own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he [or she] is not, in any litigation arising out of such statement or conduct, permitted to contradict it.' (Evid. Code, § 623; [citation].) The doctrine is defensive in nature only, and 'operates to prevent one [party] from taking an unfair advantage of

---

[6] Evidence Code section 623 provides, "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."

33

another.' [Citation.]" (*San Diego Mun. Credit Union v. Smith* (1986) 176 Cal.App.3d 919, 922-923 (*San Diego Mun. Credit Union*); see also *Behnke v. State Farm General Insurance Co.* (2011) 196 Cal.App.4th 1443, 1463 [equitable estoppel doctrine acts defensively only]; *Joffe v. City of Huntington Park* (2011) 201 Cal.App.4th 492, 512-513, fn. 15 [no stand-alone cause of action for equitable estoppel as a matter of law].)

For example, it has been held that the doctrine of equitable estoppel may be applied, after the limitations period has run, to preclude a defendant from asserting the statute of limitations as a defense to an untimely action where defendant's conduct induced the plaintiff into forbearing to file suit. (*McMackin v. Ehrheart* (2011) 194 Cal.App.4th 128, 142.)

### 3. Analysis

In accordance with these well established rules, as a matter of law plaintiffs may not state a cause of action for estoppel in pais since estoppel in pais, also known as equitable estoppel and estoppel by conduct, is not an independent cause of action. (*San Diego Mun. Credit Union*, *supra*, 176 Cal.App.3d at pp. 922-923.)

The decisions on which plaintiffs rely are distinguishable and do not convince me that estoppel in pais may be asserted as an independent cause of action. In *Division of Labor Law Enforcement v. Transpacific Transportation Co.* (1979) 88 Cal.App.3d 823, 828-829, the appellate court ruled that the allegations of the plaintiff's amended complaint were sufficient to raise "the theory of estoppel by conduct." The court did not consider the issue of whether estoppel by conduct constituted an independent cause of action.

In *Hill*, *supra*, 130 Cal.App.3d at page 191, the appellate court concluded that "estoppel by conduct is a proper theory upon which to find entitlement for a bonus." That case arose from the state labor commissioner's denial of the plaintiff employee's claim for severance pay and a bonus. The denial was appealed to the superior court,

34

which ruled that the defendant employer was estopped by its conduct from denying the plaintiff employee a bonus. The appellate court determined that sufficient evidence supported the trial court's finding. (*Id.* at pp. 190, 196-197.) The court did not address the issue of whether estoppel by conduct may constitute an independent cause of action in a civil complaint.

For these reasons, I concur with the majority's determination that the trial court, in its order of September 7, 2010, properly sustained the demurrer to the cause of action for estoppel in pais in the original complaint.

### III. *Conclusion*

Since I conclude that the trial court properly sustained the demurrers to all five causes of action in the first amended complaint, and also properly sustained the demurrer to the cause of action for estoppel in pais in the original complaint, I would affirm the trial court's February 15, 2011 judgment dismissing the entire action with prejudice after plaintiffs elected not to further amend their first amended complaint. And as I previously stated, I agree with the trial court that plaintiffs were not precluded from seeking leave from the trial court to amend their first amended complaint to seek recovery under the doctrine of quantum meruit.


_____
BAMATTRE-MANOUKIAN, J.

35

Filed 11/22/13

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| IRMA MONCADA et al., | H036728 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. CV169097) |
| v. | |
| WEST COAST QUARTZ CORP. et al., | |
| Defendants and Respondents. | |


THE COURT:

The opinion in the above-entitled matter filed on October 28, 2013, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports, and it is so ordered. Pursuant to California Rules of Court, rule 8.1105(b) and (c), this opinion is certified for publication.


_____
RUSHING, P.J.


_____
PREMO, J.


_____
BAMATTRE-MANOUKIAN, J.


36

Trial Court:

                                       Superior Court No.:  CV169097


Trial Judge:                                  The Honorable Peter J. Kirwan


Attorneys for Plaintiffs and Appellants     Law Offices of Widmann
Irma Moncada et al.:                         Randall M. Widmann


Attorneys for Defendants and Respondents  Carroll, Burdick & McDonough
West Coast Quartz Corp. et al.:         Robert A. McFarlane

                                         Beck, Ross, Bismonte & Finley
                                         Ron C. Finley
                                         Craig Allen Hansen

                                         Lim, Ruger & Kim
                                         Justice S. Chang


*Moncada et al. v. West Coast Quartz Corp. et al.*
**H036728**